**Roy W. KESTLER & Susan Kestler, Movants,**

v.

**TRANSIT AUTHORITY OF NORTHERN KENTUCKY, Respondent,**

**and**

**CONSOLIDATED FREIGHTWAYS, INC., Movant,**

v.

**TRANSIT AUTHORITY OF NORTHERN KENTUCKY, Respondent.**

**Nos. 87–SC–841–DG, 87–SC–853–DG.**

Supreme Court of Kentucky.

Oct. 6, 1988.

Michael P. Collins, Florence, Kevin G. Henry, Walter A. Ward and Elizabeth C. Lehrfeld, Clark, Ward & Hopgood, Lexington, for movants.

Robert D. Monfort, Ziegler & Schneider, P.S.C., Covington, for respondent.

STEPHENS, Chief Justice.

On January 17, 1985, Roy W. Kestler was driving a truck owned by his employer, Consolidated Freightways, when he collided with a bus owned by the Transit Authority of Northern Kentucky (TANK), resulting in serious personal injuries. Kestler and his wife filed suit against TANK, the driver of the bus, and the Transit Authority's board of directors. TANK moved for summary judgment on the grounds of sovereign immunity. The Campbell Circuit Court granted the motion, dismissing both TANK and its board of directors. On appeal, the summary judgment was affirmed by the Court of Appeals. We granted discretionary review to both Kestler, and his intervening employer, Consolidated Freightways.

The sole issue to be decided is whether TANK may claim the protections of sovereign immunity. We hold that it may not.

The sovereign immunity doctrine has enjoyed a long and well-established history in Kentucky. The common law sovereign immunity, originally established to protect the Crown from suit, has been deeply planted in the law of the Commonwealth through Section 231 of the Kentucky Constitution. Section 231 provides:

§ 231. **Suits against the commonwealth.**—The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth.

Thus it is clear that the drafters of the Constitution sought to enable the General Assembly, through statute, to eliminate the common law doctrine whenever it deemed necessary. Sovereign immunity would then exist as protection, only until the legislature sought to take it away.

The General Assembly has the discretion, however, to determine whether the protection should be eliminated entirely, or simply limited to allow claims of a particular kind or for a particular specified amount. The Mass Transit Authorities Enabling Statute, KRS 96A.010 et seq. is one such statute. Within this comprehensive statutory scheme, Section 180 provides for the *mandatory* purchase of liability insurance by the Transit Authority.

96A.180. **Insurance of authority's properties.**—*An authority shall provide for insurance of its properties, and for workers' compensation, and for public liability or any other risk or hazard arising from its activities*, and may provide for the insuring of its officers or employes against any such risk or hazard, and the expense of obtaining such insurance, and of paying the premiums therefor from time to time, shall be borne by the authority and be chargeable as an operating expense of the authority. The board of an authority may provide for self insurance and may establish for that purpose such reserves as it deems prudent. (Emphasis added.)

We have held that immunity can be partially waived by the express terms of a statute allowing maintenance of an insurance fund. *Dunlap v. University of Kentucky Stu-*

*dent Health Services Clinic,* Ky., 716 S.W.2d 219 (1986). In *Dunlap,* the University Student Health Services Clinic was sued by a student-patient for malpractice. The Clinic claimed the protection of sovereign immunity pursuant to Section 231 of the Kentucky Constitution. This Court denied the claim of protection and held that the statutory scheme set up in KRS 164.-939–944, entitled "University of Kentucky Medical Center Malpractice Insurance," constituted a clear, partial waiver of governmental immunity for the hospital to the extent of the statutorily provided insurance fund. *Id.* at 222.

There is no significant difference between *Dunlap* and the case at bar. Here, we have a comprehensive statutory scheme setting forth the proper establishment and maintenance procedures for mass transit authorities. Within this scheme is a provision mandating either the purchase of liability insurance from a private carrier or the establishment of a fund for self insurance. Either way, the statute clearly contemplates a limited waiver of governmental immunity to the extent of the insurance coverage.

Respondent argues that since no funds were specifically set aside for the payment of claims against the Transit Authority, there was no actual intent to statutorily waive its governmental immunity. We do not agree. It is sufficient that the statute sets forth a mandatory provision of liability insurance against potential claims. The statute under consideration in *Dunlap* merely allowed for the option of insuring, not a *requirement* that insurance be provided. KRS 164.941. Granting no choice to the transit authorities sends an unambiguous message from the legislature that TANK, and all other transit authorities in the state will *need* insurance.

Respondent further contends that KRS 44.072 forbids the interpretation that insurance coverage waives immunity. KRS 44.-072 provides:

**44.072. Legislative intent as to sovereign immunity in negligence claims.** —It is the intention of the general assembly to provide the means to enable a person negligently injured by the Commonwealth, any of its cabinets, departments, bureaus or agencies, or any of its officers, agents or employes while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies to be able to assert their just claims as herein provided. The Commonwealth thereby waives the sovereign immunity defense only in the limited situations as herein set forth. It is further the intention of the general assembly to otherwise expressly preserve the sovereign immunity of the Commonwealth, any of its cabinets, departments, bureaus or agencies or any of its officers, agents or employes while acting in the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies in all other situations except where sovereign immunity is specifically and expressly waived as set forth by statute. The board of claims shall have exclusive jurisdiction to hear claims for damages, except as otherwise specifically set forth by statute, against the Commonwealth, its cabinets, departments, bureaus, agencies or any of its officers, agents or employes while acting within the scope of their employment by the Commonwealth, its cabinets, departments, bureaus or agencies.

Therefore, the sovereign immunity of the Commonwealth is preserved unless specifically and expressly waived by statute. It is not necessary to examine the merits of respondent's claim, because KRS 44.072 was enacted July 15, 1986, one and one-half years after the accident which prompted the claim against TANK. Therefore, as we do not hold the statute to be retroactive, it has no application to the case at bar.

We therefore hold, that the provision of the Mass Transit Authorities Enabling Statute which requires liability insurance, KRS 96A.180, operates a limited waiver, to the extent of the insurance coverage, of the governmental immunity granted to TANK. The decisions of the Court of Appeals are reversed and remanded to the Campbell Circuit Court for proceedings consistent with this opinion.

WINTERSHEIMER, J., concurs.

LEIBSON, J., concurs in a separate concurring opinion in which LAMBERT, J., joins.

VANCE, J., dissents in a separate dissenting opinion and is joined by GANT and STEPHENSON, JJ.

LEIBSON, Justice, concurring.

I concur in the Majority Opinion so far as it goes, but it does not go far enough.

This is a plain, old, garden-variety motor vehicle collision, occurring on the streets of this Commonwealth between a truck and a bus. It so happens that the bus company operating this particular bus, rather than being privately owned, is a municipal corporation organized pursuant to KRS Chapter 96A, which permits local authorities, cities and counties, alone or in combination, to engage in this proprietary activity.

The idea that such a bus company should enjoy sovereign immunity would have been viewed as ludicrous by our constitutional forbearers who authored the Kentucky Constitution, §§ 230 and 231, controlling the expenditure of "money [which] shall be drawn from the State Treasury" and "suits [which] may be brought against the Commonwealth."

The principle that public corporations organized in this fashion are municipal corporations is one of longstanding. *Rash v. Louisville & Jefferson County Met. S. Dist.,* 309 Ky. 442, 217 S.W.2d 232, 236 (1949). *Louisville Metro. Sewer Dist. v. Simpson,* Ky., 730 S.W.2d 939 (1987) is an aberration of this principle, confusing *sovereign* immunity with the former concept of *municipal* immunity in the exercise of a governmental function.[1] The idea that a bus company operating in Northern Kentucky, whether a private or public corporation, should be immune from responsibility for injuries tortiously inflicted on others using the public highways, that it should be protected by state sovereign immunity, is an alien philosophy unsuited to the juris-

prudence of government in a responsible democracy.

The Board of Claims Act provides *limited* relief through an administrative agency for citizens injured by the negligent acts of *state* agencies. It authorizes payments from the State Treasury for injuries negligently inflicted by persons "acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies." The concept of relief in the Board of Claims Act is coextensive with the concept of state sovereign immunity. The Act does not cover the liability of TANK, or indeed of any other local entity or municipal corporation. If we afford such local entities the privilege of state sovereign immunity, the result is a large body of public corporations providing the same services and conducting the usual activities of private corporations which are licensed to inflict injury upon the public with impunity. This is not a result mandated by the Kentucky Constitution, but the meaning we ascribe to it. It is our Court, not the Kentucky Constitution, that arbitrarily and unreasonably extends sovereign immunity to public corporations simply because their existence is authorized by state statute.

On the contrary, the idea that a victim in a case such as the present one would have no recourse anywhere, were it not for a statute requiring TANK to "provide for insurance" (KRS 96A.180), should not be subscribed to by our Court, even implicitly.

The Dissenting Opinion by Justice Vance comments prematurely on the meaning and effect of KRS 44.072, which we state in our Opinion that we do not consider because, in any event, it would have no "retroactive" application. There is much about KRS 44.-072 which should give this Court pause. For instance, it states in part that:

"The board of claims shall have exclusive jurisdiction to hear claims ... against the Commonwealth ... or any of its officers, agents or employes while acting within the scope of their employment...."

---

1.  A concept now discredited: *Haney v. City of Lexington,* Ky., 386 S.W.2d 738 (1964); *Gas Service Co., Inc. v. City of London,* Ky., 687 S.W.2d 144 (1985).

This seemingly seeks to extend state sovereign immunity to employees. In *Happy v. Erwin,* Ky., 330 S.W.2d 412 (1959), in an earlier, happier age of enlightenment, striking down a statute professing to extend the immunity enjoyed by the governmental agency to the personal liability of its employees, we stated:

> "Clearly the statute violates §§ 14 and 54 of the Kentucky Constitution" (and would violate § 241 if death were involved.) 330 S.W.2d at 413.

*Happy v. Erwin* holds that "these two sections" (§§ 14 and 54) effectively deny "authority in the legislature to extinguish a right of action" involving the personal liability of a government employee acting within the scope of his employment for an agency enjoying sovereign immunity. *Id.*

There are questions regarding the meaning, the effect, and the constitutionality of newly enacted KRS 44.072, which remain to be considered by our Court in a proper case where the issues are before us. Certainly our present Opinion should not imply a rush to judgment in these matters.

LAMBERT, J., joins in this concurring opinion.

VANCE, Justice, dissenting.

I respectfully dissent because I believe there can be no implied waiver of sovereign immunity by the Commonwealth. The waiver must be specific and express.

In *Dunlap v. University of Kentucky Student Health Services Clinic,* Ky., 716 S.W.2d 219 (1986), a majority of this court held that the enactment of a statute providing for a fund from which the University could satisfy claims or judgments against the University showed (by implication) an intention of the General Assembly to waive the doctrine of sovereign immunity.

The majority in *Dunlap* was completely wrong in its assessment of the legislative intention, and the General Assembly, at its first opportunity, told us so by the enactment of K.R.S. 44.072 which provided that it is the intention to expressly preserve the doctrine of sovereign immunity except where sovereign immunity is *specifically and expressly waived as set forth by statute.*

Sovereign immunity is not specifically or expressly waived by the statute under consideration here. The majority continues to attribute to the General Assembly an implied intention to waive sovereign immunity in the face of the explicit declaration by the General Assembly that waiver is not intended unless it is specifically and expressly waived.

The majority disregards K.R.S. 44.072 in this case because it was enacted after the accident which prompted this litigation. K.R.S. 44.072, however, is nothing more than an explicit expression of the intention of the General Assembly. It tells us that the General Assembly does not intend to waive sovereign immunity by implication; that it is not waived unless a particular statute specifically and expressly waives it. It speaks to the interpretation of statutes already enacted as well as to those which may be enacted in the future.

I believe K.R.S. 44.072 was enacted in response to *Dunlap.* It tells us that the majority incorrectly interpreted the legislative intent in *Dunlap.*

We should not persist in a confrontation with the General Assembly about an implication which might be drawn from language used in a statute when the General Assembly has expressly stated no such implication was intended.

GANT and STEPHENSON, JJ., join in this dissenting opinion.