**GREEN RIVER DISTRICT HEALTH DEPARTMENT, Appellant,**

v.

**Mary M. WIGGINTON, Individually, and as Next Friend of Mary Rebecca Wigginton, and Harold L. Wigginton, Appellees.**

**No. 88–SC–275–DG.**

Supreme Court of Kentucky.

Jan. 19, 1989.

William E. Gary, III, Ridley M. Sandidge, Jr., Owensboro, for appellant.

Charles E. Moore, Owensboro, for appellees.

LEIBSON, Justice.

The Complaint as amended alleges that the infant, Mary Rebecca Wigginton, sustained severe and permanent brain damage at birth as a result of negligent treatment by the attending physician who was an employee of the Green River District Health Department (hereinafter the "Health Department"). The Complaint sought damages on behalf of the parents of the child individually, and on behalf of the child by and through its mother as next friend.

The child was born on January 8, 1983, and suit was filed on December 2, 1983. On March 18, 1987, after extensive pretrial preparation, the trial court entered an Order of Dismissal in favor of the Health Department, which it designated "final and appealable," on grounds that it was "protected by sovereign immunity." The Court of Appeals reversed and we have granted discretionary review.

The principal thrust of the claimants' argument is that the cloak of sovereign immunity should not apply because the Health Department has $1.5 million in liability insurance coverage applicable to this claim, purchased as authorized by statute. This consists of a comprehensive general liability insurance policy purchased from Monticello Insurance Company of Wilmington, Delaware, enhanced by an umbrella policy with Great American Surplus

Lines Insurance Company. KRS 212.890(4) authorizes the Health Department to "procure" this insurance. The Wiggintons claim the purchase of this coverage constituted a limited waiver of immunity to the extent of the policy. To state the same proposition another way that is more precise, the argument is the claimant's are entitled to proceed to a judgment against the Health Department which is a judgment in name only, but nevertheless a judgment for which the insurance carriers are then legally liable to the extent of their policy coverage.

The Court of Appeals opined:

"[W]e agree with the circuit court that the appellee [the Health Department] is protected by sovereign immunity. However, KRS 212.890(4) allows the appellee to be sued and a final judgment obtained which shall measure the liability of its insurance carrier to the appellants."

We agree with the reasoning of the Court of Appeals.

The statute underlying the Court of Appeals' decision is KRS 212.890, styled "Powers of local and district health departments," providing in pertinent part:

"County, city-county and district health departments may in addition to other powers specified in KRS 212.245:

. . . .

(4) Procure liability insurance;"

The cases relied upon by the Court of Appeals were *Taylor v. Knox County Board of Education*, 292 Ky. 767, 167 S.W. 2d 700 (1942) and *Dunlap v. University of Ky. Student Health Services Clinic*, Ky., 716 S.W.2d 219 (1986). A third case of the same import is *Monroe County v. Rouse*, Ky., 274 S.W.2d 477 (1954). These cases hold that where there is a statute authorizing a county or other state agency otherwise immune to purchase liability insurance for the protection of the public, the effect of such statute is to permit suit against the county or state agency to determine and measure the liability of the insurance carrier. *Dunlap v. University of Ky. Student Health*, in considering a self-insurance program established by the University of Kentucky Medical Center at the instance of the

Board of Trustees of the University as permitted by statutory authority in KRS 164.939–.944, termed this a "limited waiver" of sovereign immunity, making the comparison to the statutory permission to purchase liability insurance in the *Taylor v. Knox County* case, but its meaning is clear:

"Both statutes are permissive. Both statutes envision expenditure of public funds to establish a source for the payment of claims [either to purchase liability insurance or by self-insurance]. Neither statute contains an *express* waiver of governmental immunity. Neither statute makes the Board [agency] liable for the torts of its agents or employees but both permit the Board [agency] to be sued and both permit payment from funds as limited by the statute if a judgment is obtained." Emphasis original. 716 S.W.2d at 221.

The principal cases relied upon in challenging the Court of Appeals' decision are *Brooks v. Clark County*, 297 Ky. 549, 180 S.W.2d 300 (1944) and *Moores v. Fayette County*, Ky. 418 S.W.2d 412 (1967). The bright line between these cases and those permitting a claim is there was no statute mandating or permitting the purchase of liability insurance. Our Court held that the purchase of indemnifying insurance by the governmental entity, *per se,* did not establish a right to sue the governmental entity which was otherwise immune. Because there were no statutes empowering the agency to purchase insurance for the benefit of the public, we held that the sole purpose of the insurance was to provide coverage *in the event* the agency should "become legally obligated to pay." 418 S.W.2d at 413. Such is not the case here.

*Kestler v. Transit Authority of N. Ky.*, Ky., 758 S.W.2d 38 (1988) is the most recent case on this subject, and it is squarely in point. The issue was whether the language of KRS 96A.180, which directed the Transit Authority to "provide for insurance . . . for public liability or any other risk or hazard arising from its activities" constituted a partial waiver of such sovereign immunity as TANK enjoyed as an agency

of the Commonwealth. *Id.* at 39. We held that "the statute clearly contemplates a limited waiver of governmental immunity to the extent of the insurance coverage." *Id.* at 40.

Next, the appellant argues that the present statute is not sufficiently detailed to establish that the statutory scheme was for the benefit of the public, rather than simply indemnifying in the event liability should be imposed despite immunity. The facts suggest otherwise. The statutory power to "[p]rocure liability insurance" in KRS 212.890(4) is separated only by a semi-colon from subparagraph five (5) directing the agency to "do all *other* things reasonably necessary to protect and improve the health of the people." In *Kestler*, as in the present case, there was no express statutory language specifying that the purpose of the liability insurance thus purchased was to pay claims to injured parties naming TANK as a defendant, but such was the clear implication of the statute and we so held. *Kestler* is squarely on all fours with the present case. The only factual difference between these two cases is the authorizing statute in *Kestler* provided for mandatory purchase of liability insurance whereas the present statute is permissive. Once the agency elects to purchase the insurance, this is a distinction without a difference. In both *Taylor v. Knox County* and *Dunlap v. University of Ky. Student Health, supra,* the authorizing statutes involved were permissive, not mandatory, and the results were the same.

Next, the appellant argues that absent language specifying the purpose for the Health Department's purchase of insurance is to pay claims, the coverage should be construed as purchased only to indemnify hospital employees and volunteers, as provided for in an "ENDORSEMENT" to the policy coverage, and not otherwise to pay damages for which the agency would be liable were it not for sovereign immunity, as provided for in the *body* of the policy.

The Opinion of the Attorney General, legal advisor to the agencies of the Commonwealth, explaining the statute shortly after its enactment in response to a request for such explanation from the Commissioner of the Department of Health, belies this argument. OAG 72–470, dated July 17, 1972, a published opinion, provides the Department of Health with an explanation of the newly enacted statute, as follows:

"You ask whether the tort immunity, on the part of such departments, would continue to exist in the event such insurance is purchased? Cf. KRS 67.180 and 67.186 which provide that counties may purchase liability insurance. The Court, in *Monroe County v. Rouse,* Ky., 274 S.W.(2d) 477 (1955), said that 'the object and purpose of the statute [KRS 67.180] was to permit the governing authorities of the county to purchase insurance and thereby waive its legal immunity from liability for the torts of its agents and employees.' *Thus, in answer to your last question, the practical effect of procuring insurance based on the new statute is to effect a waiver of immunity from liability to that extent.* Through such legislation the General Assembly has made it possible that those health departments [of the categories named above] desiring to do so may procure liability insurance." Emphasis added.

With this advice of counsel in mind it is unreasonable to argue the insurance was purchased with the intent to cover only claims against employees and volunteers. The purpose of this Opinion of the Attorney General was to advise the agency as to the effect of the purchase of such insurance. The Attorney General's Opinion is not law, but it certainly represents counsel telling his client the meaning of the law, so that insurance coverage purchased pursuant to it must be deemed to have been purchased with this meaning in mind. We must infer the Health Department purchased insurance coverage for the purpose of providing for payment of claims against it on behalf of the injured public, as the Attorney General's Opinion specifies.

Because the Attorney General's Opinion was published, it was a matter of public record available to the insurance carrier as well as the agency when this policy was

sold. Thus, present protestations to the contrary notwithstanding, there is little doubt that at the time the liability insurance presently at issue was purchased the parties understood that the purpose of the insurance was to protect the public in the event of injury.

The internal structure of the insurance policy compels the same conclusion. "Green River District Health Department" was the "named insured." If the purpose of the coverage was to indemnify only the individual liability of employees and volunteer workers, we must assume that these persons rather than the "Green River District Health Department" would have been the named insured in the policy. The section of the policy providing the coverage here involved, the "HOSPITAL PROFESSIONAL LIABILITY INSURANCE COVERAGE PART," designates the "named insured," as the person insured. Only by the "ENDORSEMENT" is coverage extended to "employees and volunteers as additional insureds while acting within the scope of their duties as such."

The appellant has made a subsidiary argument to the effect that because this endorsement specifies "the insurance afforded to such additional insureds does not apply to claims made individually against any physician," the present claim against the employer based on the negligence of a physician/employee should be excluded. This argument ignores the precise language involved, "claims made *individually* against any physician" are not covered. The argument so seriously offends the plain meaning of the policy *and* elementary principles of insurance law that it does not merit further discussion.

■ Next the appellant argues that the 1986 Amendments to KRS Chapter 44, the Board of Claims Act, evince a different legislative intent with regard to implying from statutes limited waiver of immunity from the rule established by case law in *Dunlap, Monroe County, Taylor,* and *now Kestler.* Appellees' respond that their cause of action accrued under the old law; their claims accrued in 1983 and suit was filed the same year. The effective date of the amending statute is July 15, 1986. Appellees rely on the rule that statutes of this nature have no retroactive or retrospective application, citing KRS 446.080(3) which provides: "No statute shall be construed to be retroactive, unless expressly so declared."

Neither KRS 44.072 or 44.073 expressly provides for retroactive application. We have just recently, in *Kestler v. Transit Authority of N. Ky., supra,* squarely confronted this *same* issue and held that this new statute has no "retroactive" application.

Nevertheless, the appellant insists that by amending the statute the General Assembly was overruling the case we have previously decided specifying how these statutes shall apply. On the contrary, as stated in *Whitley County Board of Education v. Meadors,* Ky., 444 S.W.2d 890, 891 (1969):

> "But there is no presumption from the amendment that such is what the statute meant originally.... [T]he presumption is that the legislature, by the amendment, intended to *change* the law." Emphasis original.

Even more recently, in *State Farm Mutual Auto. Ins. Co. v. Reeder,* Ky., 763 S.W.2d 116 in a similar vein, we held that a similar type of change in the qualifying language in the Kentucky Unfair Claims Settlement Practices Act would not apply to claims arising before the effective date of the new statute. A statute establishing or withdrawing a statutory cause of action is substantive in nature and has no retroactive effect on claims arising before its effective date. In Kentucky, in cases both ancient and modern, we have consistently held that the legislative body may not by retroactive legislation terminate or impair the accrued judicial rights of a litigant. *Thweatt v. Bank of Hopkinsville,* 81 Ky. 1, 4 Ky.L.Rptr. 557 (1883); *Kentucky Home Life Ins. Co. v. Johnson,* 263 Ky. 787, 93 S.W.2d 863 (1936); and more recently, *Akers v. Baldwin,* Ky., 736 S.W.2d 294 (1987). "A right of action may be vested, and, if so, is property in the same sense in which tangible things are property and is equally

protected against arbitrary interference, and whether it springs from contract or tort or from the principles of the common law, the legislature may not take it away." 16A Am.Jur.2d, Constitutional Law, § 672, p. 656.

As we noted at the outset, the first premise underlying the Court of Appeals' Opinion was that in the absence of liability insurance the Health Department qualifies as an agency of state government protected by sovereign immunity. Appellees' Brief undertakes to challenge this premise. The Appellant's Reply Brief questions whether this issue was properly preserved by "arguments in the trial court." We do not reach this issue for a more clear cut reason: CR 76.21, effective at the time when this Motion for Discretionary Review was filed, establishes the procedure for a Cross Motion for Discretionary Review, and the prevailing party in the Court of Appeals must follow this procedure if he wishes our Court to further review other issues in addition to those raised by the Motion for Discretionary Review:

> "If a motion for discretionary review is granted, the respondent shall then be permitted ten days thereafter in which to file a cross motion for discretionary review designating issues raised in the original appeal which are not included in the motion for discretionary review but which should be considered in reviewing the appeal in order to properly dispose of the case." CR 76.21(1).

In *Com., Transportation Cabinet v. Taub*, Ky., 766 S.W.2d 42 (1988), we held that this rule foreclosed consideration of an argument *implicitly* decided by the Court of Appeals which then decided the case in favor of the respondent on other grounds. It follows with greater force that in the present case the respondents were required to file a cross motion for discretionary review to preserve this issue which was *expressly* decided against them.

For the reasons stated herein we affirm the decision of the Court of Appeals. The within case is remanded to the trial court for further proceedings consistent with this Opinion.

STEPHENS, C.J., and COMBS, GANT, LAMBERT and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents for the same reason expressed in his Dissenting Opinion in *Kestler v. Transit Authority of N. Ky.*, Ky., 758 S.W.2d 38 (1988).