**FRANKLIN COUNTY, KENTUCKY; Jim Boyd, in his official capacity as Franklin County Attorney; Bob Arnold, in his official capacity as Franklin County Judge–Executive; Robert Harrod, in his official capacity as former Franklin County Judge–Executive; and Jean Demerson, Carmello Benassi, Howard Dawson, Harold Robinson, Jennie Smither, and J.W. Luttrell, in their official capacity as members of the Franklin County Fiscal Court; and Robert R. Hicks, in his capacity as former member of the Franklin County Fiscal Court; and Hunter Hay, individually and in his official capacity as Franklin County Jailer, Appellants,**

**v.**

**Claudia F. MALONE, Successor Administratrix and personal representative of the Estate of Joseph R. Burns, Jr., Appellee.**

**Dennis R. STOCKTON, Kentucky State Police Officer and A.B. Chandler III, Attorney General of the Commonwealth of Kentucky, Appellants,**

**v.**

**Claudia MALONE, Successor Administratrix and Personal Representative of the Estate of Joseph R. Burns, Deceased and Jim Boyd, in his official capacity as Franklin County Attorney; Bob Arnold, in his official capacity as Franklin**

County Judge–Executive; Robert Harrod, in his official capacity as former Franklin County Judge-Executive; and Jean Demerson, Carmello Benassi, Howard Dawson, Harold Robinson, Jennie Smither, and J.W. Luttrell, in their official capacity as members of the Franklin County Fiscal Court; and Robert R. Hicks, in his capacity as former member of the Franklin County Fiscal Court; and Hunter Hay, individually and in his official capacity as Franklin County Jailer, Appellees.

Nos. 95–SC–0268–DG, 95–SC–0478–DG.

Supreme Court of Kentucky.

Sept. 4, 1997.

Rehearing Denied Jan. 22, 1998.

C. Thomas Hectus, R. Thaddeus Keal, Williams & Wagoner, Louisville, for Appellants/Cross–Appellees.

Bryan N. Coomer, Roy H. Wyatt, Louisville, Richard M. Sullivan, Richard B. Taylor, Conliffe, Sandmann & Sullivan, Louisville, Richard B. Taylor, Conliffe, Sandmann, Gorman & Sullivan, Louisville, A.B. Chandler, III, Attorney General, Frankfort, for Appellee/Cross–Appellants.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed a summary judgment of the circuit court which dismissed all defendants in a wrongful death suit resulting from the suicide of Joseph R. Burns, Jr. following his arrest and transportation to the Franklin County Jail. The dismissal was based on the protection of sovereign immunity.

The issues presented are whether sovereign immunity bars any claim of negligence either against the county, county officials, the state, or the individual state trooper sued. Included in the resolution of such an issue must be considerations of personal liability and governmental sovereign immunity, as well as the role of insurance and self-insurance funds in connection with alleged waivers of sovereign and governmental immunity. Questions of the personal liability of the individuals involved must also be reviewed.

This case arises from the suicide of Joseph R. Burns, Jr., in the restroom of the Franklin County Jail while he was awaiting formal

processing prior to being confined to that jail. Burns had been arrested and searched by Kentucky State Trooper Stockton and transported to the county jail where he killed himself with a 7 inch pocket knife which he had on his person. His estate brought a negligence action against the police officer, the state, the county and a number of county officials in their official and individual capacities.

The theory of the plaintiff's case was that Officer Stockton and jail employees knew or should have known that Burns was suicidal and that they were negligent in failing to detect and confiscate the knife and in failing to watch Burns more closely. The Commonwealth was said to be vicariously liable for Stockton's negligence and negligent itself in failing to train him properly. The county and its officials were charged with vicarious liability for the negligence of jail employees and with direct negligence for failing to provide adequate rules and training to insure the safety of an inmate.

The circuit court dismissed the entire complaint summarily on the grounds of sovereign and official immunity. The Court of Appeals reversed in part and held that the sovereign immunity of the county had been waived to the extent of liability insurance purchased pursuant to KRS 65.150. The Court of Appeals also held that the action may proceed against the county and its officials in their official capacity but found no basis for action against the officials individually with the exception of the jailer. They also held that the sovereign immunity does not extend to the alleged personal negligence of an agent such as Trooper Stockton. This Court accepted discretionary review.

Burns was arrested in 1989 for allegedly attempting to molest his stepdaughter. Officer Stockton and two other officers responded to the call and Stockton handcuffed Burns, informed him of his rights and explained the charge against him. Burns was then placed in the back seat of the police cruiser where Stockton performed a pat-down search of Burns' body and clothing. Stockton testified that during the search he felt objects he believed to be several keys and small baubles, a ring and two billfolds.

He said he did not remove the objects for inspection because he believed that he had nothing in there that was going to create a danger to himself or to Burns. Burns was taken to the jail where he was processed by Stockton to the extent that the officer completed the uniform citation form, fingerprinted and interviewed Burns. Stockton testified that he did not observe any behavior by Burns which was suicidal or emotionally disturbed in any way. Stockton directed the booking officer at the jail and the pretrial release officer to take note of the section on the citation where he had reported the possible threat of suicide. Before leaving, Stockton testified that he told the jail booking officer to "read that one line for your information." He did not see the booking officer read the form. Stockton then left the jail. Jail officials did not search Burns again and while he was waiting to be finally processed Burns went into the restroom located in the waiting area of the jail where he committed suicide by stabbing himself twice in the neck and six times in the chest and slitting his wrist. He bled to death before he was discovered one hour later.

## I. Jailer

 The Court of Appeals held that the jailer could be liable for the negligent actions of his employees. In this case, we must disagree. It has long been established that there is no vicarious liability on the part of a public official for acts of subordinates in which the official was not directly involved. The Burns Estate failed to produce any evidence that any deputy jailer had reason to believe that Burns might harm himself.

 The circuit judge correctly held that a jailer has a duty to exercise reasonable care to insure that harm does not occur, only if he has reason to believe that the prisoner might harm himself. Public officials are not individually liable for the negligent actions of employees unless they ratify or participate in the tortious act. *Board of Trustees of the University of Kentucky v. Hayse*, Ky., 782 S.W.2d 609 (1989). Public officials are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those who are employed by

them. *Moores v. Fayette County,* Ky., 418 S.W.2d 412 (1967). In order to have negligence or fault attributed to a public official, there must be proof of personal wrongdoing. Here, the jailer, Hunter Hay, left the jail at approximately 5 p.m. on the day of the suicide. Burns was not arrested until approximately 7 p.m. on that same day and the suicide was discovered nearly two hours later. Thus the jailer could not have been guilty of personal wrongdoing. A jailer cannot be charged with negligence in failing to prevent what he could not reasonably anticipate. *Cf. Lamb v. Clark,* 282 Ky. 167, 138 S.W.2d 350 (1940). A jailer is not an insurer of the safety of the prisoners under his control. *City of Lexington v. Greenhow,* Ky., 451 S.W.2d 424 (1970). There was no evidence presented of any negligence or deliberate wrongdoing on the part of the official jailer.

The mere fact that Burns was not searched while waiting in the booking area before his admission to jail is not evidence of negligence. Pursuant to the applicable administrative regulation as promulgated by the Corrections Cabinet, 501 KAR 3–120, prisoners were not searched until after formal booking or admission to jail. A suspect is not considered admitted to jail until the person has been booked or processed by a booking officer in the jail. A search of inmates upon admission to jail is conducted after they have been booked. It was the policy of the jail to rely on the search conducted by the arresting officer at the time of the arrest until the prisoner was booked and admitted into the jail.

■ It was error for the Court of Appeals to hold that the jailer could be liable for the actions of his deputies pursuant to KRS 71.060(1). That statute provides that a jailer shall be liable on his official bond for the conduct of his deputies. The deputy shall have all the powers and be subject to the same penalties as the jailer. The official bond referred to in the statute is not an errors or omissions liability insurance policy, but rather relates to financial responsibility only. *See* OAG 83–35; *Rider's Extrx. v. Sherrard's Guardian,* 231 Ky. 112, 21 S.W.2d 147 (1929). The official bond of the jailer relates only to his financial responsibility in connection with disbursing public money handled by the jailer and his deputies. The plain meaning of this statute cannot impute vicarious liability to the jailer for personal injuries caused by deputy jailers.

■ A jailer has custody, rule and charge of the jail and all persons in the jail pursuant to KRS 71.020. *Sudderth v. White,* Ky.App., 621 S.W.2d 33 (1981), held that a jailer has a duty to exercise reasonable care to prevent a prisoner from self harm if the jailer knows or has reason to know that the person may harm himself. Here the circuit judge properly reasoned that the jailer has such a duty only if he has such knowledge. It was error for the Court of Appeals to hold that the jailer has such a duty even if he does not have knowledge. A careful review of the record indicates that Burns produced no evidence that the jailer violated his duty to provide a habitable and safe facility. Other than a mere allegation, the Burns Estate presented no evidence that the deputy jailers were inadequately trained, managed or supervised. A single tragic incident involving jail personnel is not sufficient to establish a claim of inadequate training. *Cf. City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The duty of ordinary care to prevent self-harm arises only upon the discovery of some fact which would lead a reasonable person to believe there is some likelihood of self-inflicted injury. *Sudderth, supra.*

No element of personal fault may be attributed to Hay. In the absence of an allegation of personal fault, no action against a public official may be maintained. *Moores, supra.* The complaint against Hay fails to state a claim upon which relief can be granted and the complaint was correctly dismissed against him.

## II. Liability of County Fiscal Court Members

■ The Burns Estate argues that individual members of the fiscal court negligently failed to establish rules adequate to provide for the safe treatment of Burns pursuant to the authority of KRS 67.080(2)(d). The Burns Estate also claims

that the fiscal court members are liable for the negligent acts of their agents and employees who dealt directly with him.

 Any action against fiscal court members in their official capacities is essentially an action against the county which is barred by sovereign immunity. Ky. Const. § 231. *Littlejohn v. Rose*, 768 F.2d 765 (6th Cir. 1985).

Although their pleading is imprecise, the Burns Estate also believes that fiscal court members are liable in their individual capacity. Public officials in Kentucky cannot be held individually liable for the negligence of their agents and employees unless they participated in or ratified the actions. The Estate complains that the fiscal court members negligently failed to establish adequate rules to provide for the safety of Burns. KRS 67.080(2)(d) states that the fiscal court "provides for the incarceration of prisoners according to the provisions of KRS Chapter 441" which states that the county governing body shall prescribe rules for the government and cleanliness of the county jail and the comfort and treatment of prisoners provided such rules are consistent with state law. The Estate presents no allegation that the fiscal court enacted rules inconsistent with state law.

The fiscal court had discretion to determine how to execute the mandate of KRS 441.045(1) to provide for the cleanliness and comfort of prisoners in the county jail, and the administration of such a policy is a discretionary function. *See Thompson v. Huecker*, Ky.App., 559 S.W.2d 488 (1977). The adoption of rules providing for the proper treatment of prisoners is a discretionary policy determination and thus a discretionary function. The fiscal court members are immune from a suit based on a failure to enact adequate rules in the absence of a claim of unconstitutional or illegal conduct.

 The doctrine of official immunity protects public officials from liability in certain instances when exercising a discretionary function. In such circumstances, a public official is entitled to absolute immunity from liability as long as the official acts are within the general scope of their authority. *Hueck-*

*er, supra; Gould v. O'Bannon*, Ky., 770 S.W.2d 220 (1989).

 The highest court of Kentucky has previously established the distinction between discretionary and ministerial functions. *Commonwealth v. Frost*, 295 Ky., 137, 172 S.W.2d 905 (1943), stated that courts will not under the pretense of finding a remedy for one believed to be wronged, assume to exercise a discretion which the people, acting through their legislature, have lodged in administrative officers and agencies. The essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed. The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment. *Frost, supra;* citing *Bancamerica–Blair Corp. v. State Highway Com'n, et al.*, 265 Ky. 100, 95 S.W.2d 1068 (1936).

In *Upchurch v. Clinton County*, Ky., 330 S.W.2d 428 (1959), the predecessor to this Court stated:

Discretionary or judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful and where it is left to the will or judgment of the performer to determine in which way it shall be performed. However, an act is not necessarily taken out of the class styled "ministerial" because the officer performing it is vested with a discretion respecting the means or method to be employed.

The enactment of rules prescribing proper treatment of prisoners necessarily involves discretionary policy determinations and consequently such an act is clearly a discretionary function which entitles the members of the fiscal court to immunity from suit.

### III. County Attorney

 The Burns Estate claims that the county attorney negligently failed to advise

the members of the fiscal court and other county officials of their duty to provide for the safety of prisoners in the jail as required by KRS 69.210. The statute establishes the duty of the county attorney to give legal advice to the fiscal court and the several county officers in all matters concerning any county business within their jurisdiction. KRS 69.210(3). A county attorney, when he is sued in his official capacity, is entitled to the protection of sovereign immunity. *McCollum v. Garrett*, Ky., 880 S.W.2d 530 (1994).

As with any public official, the county attorney is immune from liability when exercising a discretionary function as long as the official acts within the general scope of the authority of office. *Upchurch, supra.* The giving of legal advice is clearly a discretionary function. The county attorney is entitled to immunity from suit based on the exercise of this advisory legal function as long as the claim does not allege illegal action or action outside the scope of authority. *Dugger v. Off 2nd, Inc.*, Ky.App., 612 S.W.2d 756 (1981). There was no such allegation in this complaint. Therefore the complaint fails to state a claim against the county attorney.

### IV. Liability of Stockton

The Burns Estate contends that Trooper Stockton knew that Burns might cause harm to himself and the officer failed to exercise reasonable care to assure that such harm did not occur. They claim that Stockton breached his duty to Burns by failing to adequately search the accused before delivering him to the jail. Stockton responds claiming, first, that the Board of Claims has exclusive jurisdiction over this matter and, second, searching a prisoner is a discretionary function for which he has immunity.

We first consider whether searching an individual taken into custody is a discretionary or ministerial act. In this case, the act of providing the care of individuals taken into custody does not involve policy making or significant judgment, rather it relates to the performance of routine duties which occur regularly and are required of all police officers. We agree with the circuit court that the searching of individuals taken into custody pursuant to state police policy is a ministerial function. We recognize that there may be some need of decisions on the part of the police officer in discharging his ministerial responsibility but it does not fit the common legal definition of discretionary.

In 1986, the legislature extended sovereign immunity to state officers and employees acting within the scope of their duties. KRS 44.070 et seq. Prior to the enactment of the amendments to the Board of Claims Act in 1986, Kentucky law imposed individual liability on public officials for ministerial acts negligently performed in the course of duty. *See Upchurch, supra.* However, following the 1986 amendments to the Board of Claims Act, this Court held that parts of KRS 44.070 which extended immunity to certain employees may violate the constitution. *University of Louisville v. O'Bannon*, Ky., 770 S.W.2d 215 (1989). This case determined that the legislature cannot constitutionally extend sovereign immunity to state officers or employees who engage in activities outside the traditional role of government. However, a lawful search of an individual following an arrest can only be conducted by an agent of the government. As long as the police officer acts within the scope of the authority of office, the actions are those of the government and the officer is entitled to the same immunity and the only recourse available to claimants is through the Board of Claims.

### V. Liability of the Commonwealth

The Burns Estate maintains that the Commonwealth of Kentucky negligently failed to train and supervise Trooper Stockton and that Stockton negligently failed to provide for the safety of Burns. Therefore, they claim that the state is responsible for the negligent acts of its officials acting in their official capacity.

Section 231 of the Kentucky Constitution provides that the General Assembly may by law direct in what manner and in what courts suits may be brought against the Commonwealth. KRS Chapter 44. This language has been part of the law of Kentucky since its establishment as a state in 1792. It

is recognized that the Commonwealth of Kentucky is immune from civil suit except as provided by this section, and that the legislature has vested the Board of Claims with exclusive jurisdiction over claims for damages against the Commonwealth arising out of allegations of negligence. Consequently, the complaint against the Commonwealth was properly dismissed.

## VI. Liability of Franklin County

The Burns Estate alleges that Franklin County is liable for the negligent actions of its employees acting in their official capacity because the county has waived its immunity from suit by participation in a self-insurance fund.

■ This Court has repeatedly enunciated the general rule that a county has the same sovereign immunity as the state. *Cullinan v. Jefferson County*, Ky., 418 S.W.2d 407 (1967); *Moores v. Fayette County, supra; Calvert Investments v. Louisville and Jefferson County Metropolitan Sewer District*, Ky., 805 S.W.2d 133 (1991) and *Hempel v. Lexington–Fayette County*, Ky., 641 S.W.2d 51 (1982). *Calvert* states in pertinent part that counties are unincorporated political subdivisions of the state, preexisting its formation, whose existence is provided for constitutionally in Sections 63, 64 and 65 of the constitution.

■ In any event it is well settled that in the absence of waiver, the county is immune from tort liability. The legislature has not expressly waived the immunity of the county from suit in tort. The Burns Estate believes that KRS 65.150 is an implied waiver of immunity.

■ KRS 65.150 states "the county or city or urban county government ... may expend funds necessary to insure any of its employees, officials and property against any liability or property damage arising out of an act or omission committed in the scope and course of performing legal duties." As described in *Withers v. University of Kentucky*, Ky., 939 S.W.2d 340 (1997), and in a series of cases beginning with *Dunlap v. University of Kentucky Student Health Services Clinic*, Ky., 716 S.W.2d 219 (1986), this Court has

previously held that the enactment of statutes permitting the purchase of liability insurance is an implied waiver of immunity. However, as noted in *Withers, supra*, the legislature subsequently enacted legislation amending KRS 44.072 to require a specific and express waiver of immunity. KRS 44.073(14) also states that the purchase of liability insurance or the establishment of a fund for self-insurance shall not be construed as a waiver of immunity by the Commonwealth.

Again, as stated by *Withers*, the majority of the Supreme Court determined that a clear legislative intent to preserve the defense of sovereign immunity unless expressly waived was announced by the General Assembly and that the legislature abrogated the decision of *Dunlap*. KRS 65.150 does not constitute an express waiver of immunity. Thus the legislature has not waived Franklin County's immunity from this type of action. KRS 65.150 only permits a county to purchase insurance covering the liability of employees and officials and it does not provide for the purchase of insurance covering liability of the county itself. We hold that participation in a self-insurance fund is not an implied waiver of immunity.

## VII. Self–Insurance Fund

■ Participation in a self-insurance fund pursuant to an inter-local cooperation act does not give rise to an implied waiver of sovereign immunity.

■ As noted earlier, this Court has held in a series of cases including *Dunlap, Kestler v. Transit Authority of Northern Kentucky*, Ky., 758 S.W.2d 38 (1988) and *Green River Health Dept. v. Wigginton*, Ky., 764 S.W.2d 475 (1989), that the enactment of statutes permitting the purchase of liability insurance constitutes an implied waiver of sovereign immunity. The General Assembly subsequently adopted legislation limiting such a waiver to situations where it was specifically authorized by statute. KRS 44.072 and KRS 44.073(14). *Withers* stated that the legislature had abrogated the decision of *Dunlap*.

The Court of Appeals erroneously held that KRS 44.070 et seq. has no application to

counties. This Court announced in *Cullinan* that a county is a political subdivision of the Commonwealth and as such is an arm of state government protected by the same sovereign immunity as the state.

Franklin County does not have what is generally considered to be commercial insurance. The county participates in a trust, the Kentucky All Lines Fund, sponsored by the Kentucky Association of Counties. Counties have associated to self-insure pursuant to KRS 65.150(3) under the authority of KRS 65.210 et seq., the Inter-local Cooperation Act. There is clearly a difference between a fund of money contributed to by local governments and held in trust for the indemnification of the participating members, officers and employees from the purchase of commercial liability insurance coverage. It could be argued that when a local government pays a premium to a commercial insurance company, that public funds have been expended. It may be appropriate to exempt commercial insurance companies from the protection of sovereign immunity and require such companies to pay a proper claim. However, in a self-insurance group, the funds have not been expended until a claim is made and such funds could be used to reduce contributions or make refunds in the following years. In regard to commercial insurance, any loss sustained is the loss of the insurance carrier. We agree with the Supreme Court of Maine which distinguished participation in state-sponsored self-insurance funds from the purchase of commercial insurance and determined that the participation in a self-insurance fund did not constitute a waiver of sovereign immunity. *Maynard v. Com'r of Corrections,* 681 A.2d 19 (Me.1996).

## VIII. Claims Against Local Governments Act

The Claims against Local Government Act, KRS 65.200 et seq., offers no relief for the Burns Estate in this case. The specific language of KRS 65.2001(2) provides "[n]o provision of KRS 65.2002 to 65.2006 shall in any way be construed to expand the existing common law concerning municipal tort liability as of July 15, 1988, nor eliminate or abrogate the defense of governmental immunity for county governments."

Here the alleged cause of action arose in 1989 and when this Court considers the effect of KRS 44.073(14), which was enacted in 1986 in connection with the philosophy expressed in *Withers* regarding the abrogation by statute of case law, we must conclude that *O'Bannon, Wigginton, Kestler,* and *Dunlap* are not applicable to this situation in any respect.

KRS 65.150 only allows a county to purchase insurance to cover the liability of employees and officials. The statute obviously does not include the purchase of insurance covering the liability of a county itself, consequently, *Dunlap, Kestler,* and *Green River,* even if given application, do not result in a waiver of the immunity of the county from suit.

■ Finally, reliance by the Court of Appeals on the decision in *Lee v. McCracken Co. Fiscal Court,* Ky.App., 872 S.W.2d 88 (1993), is misplaced. The holding by the Court of Appeals that KRS 65.150 indicates an intention to waive county immunity is incorrect both in this case and in *Lee, supra.* The statute merely permits a county to insure its employees, officials and property and not the county itself. This type of insurance would be available for such persons who would have no individual sovereign or governmental immunity and would have no official immunity for possible negligence in the performance of their ministerial duties. There is no finding of an express legislative intent to waive sovereign immunity in such a statute. We must also observe that the complaint of the Burns Estate fails to specify any individual capacity in the heading or in the body of the complaint and it does not seek judgment against any individual in the concluding demand for relief. Thus we believe the complaint failed to state a separate cause of action for personal liability against any particular person. *Calvert Investments, Inc. v. Louisville and Jefferson Co. Metropolitan Sewer District, supra.*

This case must follow the philosophy set out in *Withers,* in which a majority of this Court, by a 4 to 3 decision, extended sovereign immunity to a medical malpractice claim

against the University of Kentucky and its Medical Center on the basis that the school was engaged as a teaching hospital. *Withers* announced that the enactment of KRS 44.070 was an abrogation of the decision in *Dunlap* and other related cases. Although some may disagree originally with the thrust of *Withers* in light of *Kentucky Center for the Arts v. Berns,* Ky., 801 S.W.2d 327 (1991), *Withers* is now the law of the Commonwealth. There is some significance to the fact that *Withers* was not challenged by a motion for rehearing. It could be argued that *Withers,* like *Berns,* was an extension of the pure governmental function. However, in this case there is clearly a government responsibility and a discharge of that responsibility although it is claimed to have been negligent. Accordingly, because the particular case before us involves a clear governmental duty, and this Court has chosen to extend the protection of sovereign immunity to even possibly marginal claims of governmental activity, we must conclude that the protection of sovereign immunity against civil lawsuit is available to the parties sued in this action.

The only possible recourse for those who believe they are injured or damaged in some way by the activities of the government or its agents is a resort to a proper claim before the Board of Claims. Section 231 of the Kentucky Constitution is commonly referred to as providing immunity, but a reading of the exact language of the constitutional section indicates that it provides a direction for those who have claims and a method by which they can seek some limited redress of such claims. Questions about the adequacy of such compensation in relation to the provisions of the Kentucky Constitution set out in *Berns* are not before this Court and we cannot decide them. The adequacy of compensation is primarily a responsibility of the legislative branch of government. The interpretation of the Constitution as applied to particular legislative acts is the province of this Court.

The decision of the Court of Appeals is reversed and the summary judgment of the circuit court is reinstated dismissing all claims.

STEPHENS, C.J., and COOPER, JOHNSTONE, GRAVES and WINTERSHEIMER, JJ., concur.

LAMBERT, J., files a separate opinion dissenting in part, concurring in part, in which STUMBO, J., joins.

LAMBERT, Justice, dissenting in part and concurring in part.

In my view the majority has erred in exonerating trooper Stockton of liability. I believe sufficient evidence was presented to go to a jury on Stockton's negligence.

It is important to recall that Stockton had arrested the decedent for an alleged sex crime against his minor stepdaughter. Stockton was informed that the decedent had threatened suicide and that he usually carried a knife. If ever there were facts and circumstances known to a police officer which dictated a high degree of care, these were they. There is no doubt that Stockton recognized some danger of suicide for he brought to the attention of the jail employee and pretrial release officer that there had been a threat of suicide. Whether he was negligent in searching the prisoner and whether his negligence, if any, was a substantial factor in the death of the decedent was for the jury.

Contrary to this Court's opinion in *University of Louisville v. O'Bannon,* Ky., 770 S.W.2d 215 (1989), and contrary to our venerable decision in *Happy v. Erwin,* Ky., 330 S.W.2d 412 (1959), the majority has conferred immunity upon an employee of the Commonwealth. In *O'Bannon,* we held that a legislative attempt to confer such immunity upon a state employee was unconstitutional. In *O'Bannon* the issue was whether a physician employed by the University of Louisville, and thus the Commonwealth of Kentucky, and engaging in medical practice in such capacity, was entitled to sovereign immunity for his negligence. We held he was not. Here, the issue is whether Trooper Stockton, an employee of the Commonwealth of Kentucky, engaged in the performance of his duties, is entitled to the immunity of the Commonwealth. Our decision that he has

such immunity cannot be harmonized with the authority cited hereinabove.

Except as stated herein, I concur.

STUMBO, J., joins this opinion dissenting in part and concurring in part.