Dustin JERAULD, by and through his Guardian, Patricia J. ROBINSON, Appellant,

v.

Mark KROGER; Pamela Sams; and Ramona Parker, Appellee.

No. 2010–CA–001429–MR.

Court of Appeals of Kentucky.

Aug. 5, 2011.

---

Glenn A. Cohen, Paul J. Hershberg (argued), Cynthia L. Effinger, Louisville, KY, for appellant.

Bradley A. Case, Jeremy S. Rogers (argued), Louisville, KY, for appellee, Mark Kroger.

Mary Ann Stewart (argued), Jennifer H. Langen, Covington, KY, for appellees, Pamela Sams and Ramona Parker.

Before TAYLOR, Chief Judge; CAPERTON and CLAYTON, Judges.

## OPINION

CLAYTON, Judge:

This is an appeal of a Kenton Circuit Court opinion granting summary judgment to the Appellees, Mark Kroger, Pamela Sams and Ramona Parker. The trial court held that they were entitled to qualified immunity in an action alleging state claims of negligence and intentional infliction of emotional distress. For the reasons that follow, we affirm the decision of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

On February 7, 2004, Appellant Dustin Jerauld was arrested for the burglary of his brother, Steve Robinson's, home. He was taken to the Kenton County Detention Center ("KCDC") by Sergeant Tony Wilson and Officer Chad Girdler. While the officers discovered what appeared to be cocaine and heroin on Jerauld, they stated that they did not believe he was under the influence of drugs at the time of his arrest. Officer Girdler transported Jerauld to KCDC. Sgt. Wilson had relayed information to Officer Girdler given to him by Jerauld's father, Billy, that he had said he might hurt himself.

Jerauld completed an intake form at the KCDC and answered in the negative questions regarding his desire to hurt himself. Nonetheless, the intake officer notified Wehrner Stilt, the supervisor, that he had prior suicide threats. Stilt contacted Appellee Mark Kroger, a certified psychologist, who interviewed Jerauld and found that he was a Level III suicide risk. There was also an indication that Jerauld could suffer from heroin withdrawal, so it was recommended that he be put in a cell without sheets or pillowcases and that he be checked every twenty minutes.

On February 9, Jerauld made a threat of self-harm to his mother over the phone; however, he told Appellee Pamela Sams, a member of KCDC's medical unit, that he wanted to be taken off suicide watch. Sams contacted Kroger with Jerauld's request. After another meeting, Kroger recommended that he be released to the general jail population. The following day, Jerauld was released by the medical staff and moved to the general population.

On February 11, Jerauld informed jail personnel that he needed help with heroin withdrawal. Sams questioned him and determined that he was not experiencing heroin withdrawal symptoms but placed him on the list to see the jail physician the next morning. Jerauld phoned his parents and his attorney and told them he was having suicidal thoughts; however, they

did not take the threats seriously and stated that they believed he was trying to manipulate them into putting up the bail money for his release.

At 9:25 on February 11, Appellee Romona Parker took the medical assistant to Jerauld's cell and found him hanging by his bed sheet. While efforts were made to revive him, he suffered a permanent brain injury and is in a vegetative state, requiring constant medical care. His custodian originally brought an action in the United States District Court for the Eastern District of Kentucky alleging violations of the Eighth and Fourteenth Amendments to the U.S. Constitution. She also asserted claims for negligence and intentional infliction of emotional distress under Kentucky law.

On March 19, 2009, the Federal District Court granted summary judgment on the federal claims, finding that the Appellees were entitled to qualified immunity. It declined to exercise pendent jurisdiction over the state claims, however, and dismissed them without prejudice.

On April 17, 2009, Jerauld's guardian filed state claims for negligence and intentional infliction of emotional distress in the Kenton Circuit Court. On July 6, 2010, the Kenton Circuit Court granted summary judgment to the Appellees, finding that they were entitled to qualified official immunity for their actions. This appeal followed.

## STANDARD OF REVIEW

In reviewing the granting of summary judgment by the trial court, an appellate court must determine whether the trial court correctly found "that there [were] no genuine issue[s] as to any material fact and that the moving party [was] entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03.

[A] trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only [when] it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. [While] [t]he moving party bears the initial burden of [proving] that no genuine issue of material fact exists ... the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial."

*Community Trust Bancorp, Inc. v. Mussetter*, 242 S.W.3d 690, 692 (Ky.App.2007) (internal citations omitted).

Since summary judgment deals only with legal questions because there are no genuine issues of material fact, we need not defer to the trial court's decision and must review the issue de novo. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App. 2001). With this standard in mind, we will review the issues before us.

## DISCUSSION

■■■ All parties agree that the sole issue before our Court is whether each of the Appellees is entitled to qualified official immunity. Immunity from suit is not only available "to the state [but] also extends to public officials sued in their representative (official) capacities." *Yanero v. Davis*, 65 S.W.3d 510, 518 (Ky.2001). Qualified official immunity is an affirmative defense that must be specifically pled. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity.... Similarly, when an officer or employee of a governmental

agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled. .... But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am.Jur.2d, *Public Officers and Employees*, § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id.* § 322; (2) in good faith; and (3) within the scope of the employee's authority. *Id.* § 309; Restatement (Second) Torts, *supra*, § 895D cmt. g.

*Yanero*, 65 S.W.3d at 521–522.

■ In *Rowan County v. Sloas*, 201 S.W.3d 469 (Ky.2006), the Kentucky Supreme Court held that the supervision of prisoners is a discretionary act and entitles those in that position to qualified immunity. In order to prove that a jail employee is liable for negligence in a suicide attempt, the employee must either know or have reason to know that the prisoner is at risk of harm and fail to take reasonable care to prevent the prisoner from harm. *Sudderth v. White*, 621 S.W.2d 33 (Ky.App. 1981).

Parker was a deputy jailer at KCDC. While her duties did not always include the medical isolation cells, she had worked in them in the past. Jerauld informed Parker that he needed help when she did a routine head count on her shift on February 11. Parker contends that Jerauld told her he was having heroin withdrawal. Parker stated that Jerauld did not tell her

he was suicidal and that she assured him she would obtain medical help for him. She also noticed him talking on the phone a couple of times after this encounter and before his suicide attempt. She stated that he appeared to be doing well.

Pamela Sams is a member of KCDC's Medical Unit. On February 9, Jerauld requested that Sams remove him from medical watch and place him in the general population. Sams stated that he appeared to not have any symptoms of heroin withdrawal at the time and that he denied having any desire to hurt himself. Sams then contacted Kroger for further analysis of the situation.

■ Appellant contends that neither Sams nor Parker are entitled to qualified immunity because their acts in dealing with Jerauld were ministerial in nature. "[W]e have continued to recognize the distinction between discretionary and ministerial acts and have held that the wrongful performance of a ministerial act can subject the officer or employee to liability for damages." *Yanero*, 65 S.W.3d at 523 (citing *Kea–Ham Contracting, Inc. v. Floyd County Dev. Auth.*, 37 S.W.3d 703 (Ky. 2000)). "An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed." *Yanero*, 65 S.W.3d at 522, (citing *Franklin County, Ky. v. Malone*, 957 S.W.2d 195, 201 (Ky.1997)) (quoting *Upchurch v. Clinton County*, 330 S.W.2d 428, 430 (Ky. 1959)).

■ Appellant argues that Parker and Sams were obligated to take specific acts in dealing with him since he was at risk for suicide. Thus, Appellant contends their acts were ministerial. It is important to note, however, that both contend they did not believe him to be at risk for suicide. "[I]n the final analysis, the decision as to

whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case...." *Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc.,* 286 S.W.3d 790, 809 (Ky.2009).

■ In this case, Sams and Parker made decisions regarding Jerauld's suicide risk based on observations they made.

> Discretionary or judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Collins v. Commonwealth of Ky. Natural Resources and Environmental Protection Cabinet,* 10 S.W.3d 122, 125 (Ky.1999), quoting *Franklin County, Ky. v. Malone,* 957 S.W.2d 195, 201 (Ky.1997), reversed on other grounds by *Yanero,* 65 S.W.3d at 522. We find acts taken by Parker and Sams to be discretionary in nature and, therefore, both are entitled to qualified official immunity.

■ Kroger was not a full-time employee of the KCDC but was hired on a contractual basis to perform duties as a psychologist. "Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed." *Yanero,* 65 S.W.3d at 521, (citing *Salyer v. Patrick,* 874 F.2d 374 (6th Cir.1989)). Thus, Kroger could also use the defense of qualified official immunity. Like the other two appellees, however-

er, Kroger's actions must be deemed to be discretionary rather than ministerial in order to afford him the defense of qualified immunity.

In deciding Kroger was entitled to qualified immunity, the trial judge found:

> No task is more inherently discretionary than evaluating actions and behaviors of prisoners and deciding whether they are sufficiently alarming to warrant additional review by psychologists or other officials. Such decisions inherently require conscious evaluation of alternatives, personal reflection and significant judgment. In certain circumstances, "their judgment may arguably be questionable, particularly with the benefit of hindsight, but applying such an unrealistic standard is not only unjust but unauthorized." *James v. Wilson,* 95 S.W.3d 875, 910 (Ky.App.2002).

Summary Judgment entered July 6, 2010, at page 7.

Appellant, however, argues that Kroger was a licensed professional and, as such, was responsible for his own negligence. She asserts that Kentucky caselaw unequivocally holds that compliance with applicable standards of care is a ministerial duty with respect to medical professionals. As set forth in *Yanero,* supra, however, qualified official immunity deals with the functions performed rather than the title or credentials of the one performing those functions. In *Caneyville Volunteer Fire Department,* 286 S.W.3d at 809 n. 9, the Kentucky Supreme Court opined that the exercise of professional expertise and judgment is more likely to fall within discretionary acts rather than ministerial duties. We agree.

Kroger interviewed Jerauld one on one. He evaluated him using his own discretion

along with tests and forms which he interpreted. After this evaluation, he determined that he was not a suicide risk. Clearly, his actions were of a discretionary nature. We believe the acts undertaken by Kroger were discretionary in nature and entitled him to qualified official immunity. Thus, we affirm the decision of the trial court.

ALL CONCUR.