## Commonwealth ex rel. Meredith, Atty. Gen., v. Frost, Commissioner of Welfare.

June 25, 1943.

Hubert Meredith, Attorney General, and Frank A. Logan, Assistant Attorney General, for appellant.

Joe Leary and Sam Rosenstein for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

As the end of the fiscal year has approached, the Commissioner of Public Welfare has found that there is a large sum remaining of the appropriation for the year for the payment of Old Age Assistance. If it should not be distributed before June 30th the appropriation for the special purpose will revert to the General Fund of the Commonwealth and an equal amount will not be available from the Federal government. He proposed to distribute a portion of this balance to those on the rolls as additions to their May and June pensions. The Attorney General questioned the legality of the proposed action and suggested that the Commissioner obtain a declaratory judgment respecting the matter. However, he declined to bring the suit for the Department of Welfare. The Commissioner then had it instituted through private counsel against the Attorney General. His special demurrer based upon the ground that he was not a proper party was sustained. An amended and substituted petition was then filed against individual representatives of the class who would receive the bonus and of the class whose applications are pending and who would not benefit by it. The Attorney General, without objection, filed an intervening petition in the name of the Commonwealth, with himself as relator, in which he spoke not only for the Commonwealth but essayed to represent "all those who have filed applications for old age assistance and who have not received any grants or payments from the funds available for that purpose." The circuit court declared the proposed plan of the Commissioner of Public Welfare to be legal. The Attorney General appeals.

The General Assembly appropriated $4,250,000 for the fiscal year ending June 30, 1943, to the Department of Welfare "For ordinary expenses of operation and co-operation with the Federal Government under the Social Security Act approved August 14, 1935, including adjustments of prior year or current year accounts necessary to comply with the Federal regulations, and for the administration of Old Age Assistance * * *. Also, for administration of the child welfare program

and for the administration of the existing statutes pertaining to aid to dependent children and to aid to the blind provided these two statutes are held valid by the Court of Appeals." KRS, page 353; ch. 1, Acts of 1942. The State appropriation, to the extent of its proper distribution, has been and will be supplemented by the same amount by the Federal Government. The statutes define the classes of children, aged and blind persons eligible for the benefits and outline the duties of the Department of Welfare in respect to administration. KRS, Chaps. 200, 205, 207, Sections 200.010 et seq., 205.010 et seq., and 207.010 et seq. The administration of these funds is cooperative and in a large measure subject to the rules and regulations of the Federal Bureau.

In the administration of the Old Age Assistance the Department, through field representatives and an office staff, investigates applications and measures their qualifications by the standards described in the statute and more definite regulations of the Federal Bureau, and when approved makes an allotment or grant of a monthly sum to each of them according to their respective individual necessities and the total money available. During the course of the year the Department has paid only 70% of those amounts. About 12,500 applications have not been investigated. In this record the Commissioner of Public Welfare essentially justifies the limitation both in amounts and in beneficiaries paid as having been required by prudent administration of so vast a program, including the conservative maintenance of a reserve that the fund might not be exhausted before the end of the year. Among the reasons are (1) the necessity of withholding funds necessary to meet anticipated payments to "Needy Blind" and "Dependent Children," the validity of the act providing for relief of such children not having been declared until December 4, 1942, so that its operation could not be begun until after January, 1943; (2) the impossibility of definitely determining the requirements in advance because of the many contingencies and factors involved, including the number of new approvals and the removals from the rolls by death or otherwise; and (3) the impossibility of making a greater number of investigations of new applicants because of limited personnel, and inability to keep or employ qualified field agents.

In March, 1942, the Department had "frozen" the pension roll to those then on it for reasons deemed suffi-

cient. In January, 1943, the Franklin Circuit Court, in a suit brought by the Attorney General against the Commissioner of Public Welfare, issued an injunction requiring the Department to open up the lists and cause all applications for assistance to be investigated and to approve and pay all who fall within the class described by the statutes, and that the Commissioner administer the law "without favor or discrimination." The Commissioner has maintained that he has faithfully and diligently complied with this judgment in so far as it was possible with the force at his command and as a matter of fact has added many names to the roll. In addition to this service of investigating applicants for Old Age Assistance and reinvestigating the condition of each pensioner annually to determine his continuing eligibility, they have had to perform a multplicity of other duties in relation to other programs of the Federal Social Security Bureau. In short, this justification is that the Department has been swamped and overcome by the number of applications and the requirement of rigid investigations before approval.

In order to save as much as possible of the appropriation, both State and Federal, for the purposes intended and avert reversion and loss, it had been agreed by the Commissioner of Welfare and Federal Bureau to pay those who have received only 70% of the allowances, the equivalent of 30% additional for each of the months of May and June. There are approximately 55,000 persons on the roll who would receive this sum. This additional distribution or bonus will consume around $235,000 of the State appropriation and the same amount received from the Federal Government. Even with this distribution there will be something like $350,000 or $400,000 to revert to the General Fund.

The Attorney General charged that the inability to use all the appropriations has been due to negligence and inefficiency and the violation of the injunction referred to. But he offered no evidence in support of his severe charges. The only witness heard was the Director of Public Assistance in the Department of Welfare. Her testimony revealed the immense volume of work laid before and accomplished by the Division, and gave the causes of the situation which now exists. She undertook to justify them. From the same facts and figures the Attorney General undertakes to draw support of his

charges. It does not seem material to the decision of the legal questions to relate these facts or the respective deductions of the parties.

The trial court delivered the following opinion:

"There is absolutely no evidence here that there has been discrimination against any person whose application has been filed with the Department for Old Age Pension or in favor of any person who has been granted Old Age Assistance. The Attorney General has, in essence, asked the Court to take this arm of the State Government and, for all practical purposes, appoint a Receiver for it and administer it under Court orders. That is manifestly impossible; could not be done under any circumstances; and the testimony shows that there has been no discrimination in favor of one applicant against another.

"It is therefore the opinion of the Court that the surplus money remaining in the fund undistributed by reason of a safe administration of the fund to make the payments last throughout the year, should immediately be granted and given to those persons whose eligibility has been approved and who have been placed on the rolls for Old Age Assistance, and all of the money distributed to such persons eligible at this time for that Old Age Assistance, that is all that the Federal Government will approve. I am sorry there are not additional old people who are eligible at this time to take up the entire fund so that none of it would revert either to the State or to the Federal Government.

"I understand some of the difficulties that confront the Department in these investigations, that they are required to make in a particular manner by the Federal Government, and I am confident from the evidence of the witness that they have made such investigation, certainly in substantial compliance with the judgment of the Court heretofore given."

The Attorney General differs from the opinion or conclusions and submits that the court has misconceived his purpose. He declares that purpose to be to have the court require the Commissioner of Welfare to perform his duties impartially and in accordance with the injunction issued in the other suit. He also calls attention to the prayer of his intervening petition to have the entire

undistributed sum impounded by the court and made available for payment, "ratably, equitably, impartially, without favoritism or discrimination, to all who are entitled to receive payments under the law, including those on the waiting list, as well as those on the approved list, and that those on the waiting list be equalized therefrom with those on the approved list." Although he attacked it in the circuit court as wrong, he says in brief filed here that the plan of distribution which has been approved by the court may be all right as far as it goes, but insists that it is discriminatory and works an injustice to those not on the roll but who are justly entitled to the pension, and that this court should destroy the approved plan and order the distribution of the entire appropriation in order to avoid lapse of any of it.

The Attorney General finds authority to avoid the lapse of the appropriation in KRS 45.230, which is quoted for convenient reference:

"No state officer or agency shall, after the close of any fiscal year, incur, or vote, order or approve the incurring of, any obligation or expenditure under any appropriation for that fiscal year, and no expenditure shall be made from or charged to any appropriation for any fiscal year that has expired at the time the obligation for the expenditure was incurred. The Department of Finance may, for a period of three months after the close of any fiscal year, draw warrants against the available balances of appropriations made for that fiscal year, for the payment of expenditures incurred during that year or in fulfillment of contracts properly made during that year, but for no other purpose. After the expiration of three months from the beginning of each fiscal year, all balances of appropriations for the prior fiscal year shall lapse, unless otherwise provided by law, and no further payments shall be made on any claims on account of expenditures of the prior fiscal year."

The Attorney General submits that the plan he proposes would be equivalent to an "obligation for the expenditure" incurred during the current fiscal year, which may be actually paid as late as three months after its close, during which time further applications may be reviewed and allotments made.

The gratuitous payment periodically to indigent old persons is the most recent innovation in the public pension systems of the country and one of the paternalistic developments of the past decade, having its origin, at least nationally and in Kentucky, in the years of financial depression. It began with the Social Security Act of Congress of August 14, 1935. The part applicable to appropriations for old age assistance was enacted, as it is stated, "For the purpose of enabling each State to furnish financial assistance, as far as practicable under the conditions in such State, to aged needy individuals." 42 U.S.C.A. sec. 301. The Act proceeds to demand that certain provisions be made by the states in order to share in appropriations. This includes legislation and administrative rules which are subject to the approval of the Social Security Board. The share of each State in the Federal fund is an amount equal to that appropriated by the State. To enable Kentucky to share in this Federal appropriation and pay pensions to old persons, the Constitution was amended in 1935. Section 244a, Kentucky Constitution. The Legislature at its 1936 session enacted a statute, c. 94, in conformity therewith. This was superseded by the statute to which we have referred. Acts of 1940, Chap. 159; Section 3766bb et seq., Kentucky Statutes; KRS 205.010 et seq. The statute declares that "Old age assistance shall be granted to" the persons described as eligible, and also provides in some detail how the law is to be administered by the Commissioner of Public Welfare, including the grant of power to "develop standards and policies for old age assistance, and the administration" of the Act. KRS 205.040. The appropriation act of 1942, quoted above, provides that the sum appropriated is to be used in "cooperation with the Federal Government under the Social Security Act, approved August 14, 1935, including adjustments of * * * accounts necessary to comply with the Federal regulations." These laws vest a broad discretion in the Commissioner of Public Welfare in the matter of administrative policy and operation in connection with or under the Federal statute and the rules and regulations of the Social Security Board.

It is often difficult to draw the line between policy-making and simple discretionary action and between what is discretionary and what is ministerial. The character of duty is to be determined by the nature of the act to be performed and not by the office of the per-

former. 43 Am. Jur., Public Officers, sec. 258; 38 C.J. 597. In the instant controversy the parties have recognized that the former judgment directing the Commissioner of Public Welfare to accept and consider all applications for old age assistance was a proper judicial direction to him to perform a duty, for the law declares that every person within the purview of the act is entitled to its benefits, consequently that every applicant is entitled to have his claim received and acted upon. Determining whether a particular claimant comes within the standards of the statute and the Federal regulations is a matter of discretion. How much the annual appropriation may be used each month for distribution among the three classes of beneficiaries and the amount payable to each requires an even higher degree of discretion, for prudent and fair management requires the consideration of many factors. With regard to the performance of discretionary duties, it is well said in 42 Am.Jur., Public Administrative Law, Section 69:

"Administrative officers may lawfully be vested with a large measure of discretion in exercising their powers, but this discretion must be exercised in accordance with established principles of justice and not arbitrarily or capriciously, fraudulently, or without factual basis. Discretion of administrative officers does not extend to permitting them to ignore or transgress limitations upon their power. Where power is conferred upon an administrative board and its exercise is made mandatory, there is no discretion as to whether, in good faith and in accordance with the legislative will, the power shall be exercised, although there may be discretion as to the manner of its exercise. When the only right of an individual or the public which the law gives is that which a designated officer deems best, the honest decision of that officer is the measure of the right."

However, in the exercise of every power emanating from the people there enters the constitutional command of equal protection of the laws, which means equal rights for all similarly situated. Therefore, administrative officers must execute the law committed to them fairly and honestly and treat everyone alike according to the standards and rules of action prescribed. Where there is a failure in this respect and it extends

beyond the rudimentary requirements of fair play, it enters the realm of unreasonable and arbitrary action, from which the courts will save the citizen touched by it. There are many factors affecting the scope of judicial review of administrative action. Neither its extent nor limitation can be closely defined. In the absence of statutory authority in a particular case, it may be said that the courts will not, under the pretext of finding a remedy for one believed to be wronged, assume to exercise a discretion which the people, acting through their Legislature, have lodged in administrative officers and agencies.

As said in Bancamerica-Blair Corporation et al., v. State Highway Commission et al., 265 Ky. 100, 95 S. W. (2d) 1068, 1071:

"The very essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed. The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment."

Judicial discretion is a thing apart, and administrative discretion will not be disturbed by the courts unless it is abused or unreasonably exercised or is otherwise unlawful. 42 Am.Jur., Public Administrative Law, sec. 209; Board of Trustees of Firemen's Pension Fund v. McCrory, 132 Ky. 89, 116 S.W. 326, 21 L.R.A.,N.S., 583; Crawford v. Lewis, 170 Ky. 589, 186 S.W. 492; Dorman v. Dell, 245 Ky. 34, 52 S.W. (2d) 892; City of Middlesboro v. Byrd, 247 Ky. 348, 57 S.W. (2d) 49; Board of Trustees v. State Board of Education, 269 Ky. 253, 106 S.W. (2d) 985.

The trial court found there was no evidence of an unreasonable or arbitrary exercise of discretion in the failure to add names to the pension roll or any unfair or discriminatory administration. It is unfortunate that the needy old people for whom the Legislature appropriated this money will not receive it. The proof is that the Commissioner of Public Welfare through the Director of the division had done the best he could under the circumstances, and that his inability to accomplish more has been the result of lack of time and insufficient employees. There is nothing in this record to show that it has not been. On the appeal the Attorney

General compares the number of employees with the results of the past six months and contends that it evidences inefficiency and negligence, and that the court should repair the damage and grant the remedy in the manner prayed in his intervening petition.

The suggested remedial plan of the Attorney General to borrow time of the ensuing fiscal year by having the court impound the balance of this year's appropriation and require the Commissioner to allot it retroactively is neither feasible nor lawful. There is no evidence that it is within the rules and regulations of the Federal Social Security Board or that it would equal or match the funds. It would seem, as we have pointed out, that the State appropriation is conditioned upon such cooperation. Aside from the administrative hindrances, the scheme is not in accord with the purpose and spirit of the Old Age Assistance Act. The intention is to pay the beneficiaries currently something to exist upon and to aid them to live day by day. To distribute this money during the months of July, August and September would be to bestow a dole for periods that have passed and to give for one or more months double the sums the beneficiaries would be entitled to receive out of next year's appropriation, which in some cases might exceed the statutory monthly limitation. Moreover, the suggested plan, it seems to us, would be a subterfuge and an evasion of the statutes which not only establish an annual budget but require that it be strictly observed. They require that all executive and administrative officers spend or incur the expenditure only of money appropriated for the current year growing out of transactions within that year. The provisions of KRS 45.230, which we have quoted, that the Department of Finance, after the close of any fiscal year, may for three months draw warrants against the available balances of appropriations for payments incurred or in fulfillment of contracts properly made during the previous year, "but for no other purpose," obviously is to permit the clearing of payments of obligations legally and in good faith contracted during the course of the year which had just closed. It is apparent that commitments legally made in the latter part of June cannot be paid or cleared for payment before July 1st. That is all the provision means. It was not intended that it should be used to evade the budget law, however worthy the object or purpose might be. The circuit court, therefore, properly refused to

148

declare such a right to exist and to approve or aid the proposed scheme.

The judgment is affirmed.

Whole Court sitting.