OPINION

LESTER, Chief Judge.
This is an appeal from a judgment supported by an opinion reversing a decision of the Commission for Health Economics Control in Kentucky which denied an application of appellee, Christ Hospital Corporation, to establish an ambulance service in the nine Northern Kentucky counties.
From 1988 through 1990 appellee, Christ Hospital of Cincinnati, operated an ambulance service in a number of Northern Kentucky counties. It offered three levels of service, namely, basic, intermediate and advanced, the last of which was a sophisticated type of operation in that such a mobile unit carried an emergency medical technician, a paramedic and a registered nurse. What this translates to is that advanced-level life support is available during actual transportation of a patient as opposed to being furnished only at the termination point of the run. Moreover, a critical care nurse was in radio contact with the ambulance at all times needed to meet unforeseen circumstances. This program was provided twenty-four hours a day on a seven day weekly basis.
In 1990, at the behest of the Kentucky Cabinet for Human Resources, Christ Hospital applied for a license to operate its units in the Commonwealth because, although runs originating in Ohio and coming to Kentucky did not necessitate such a license, the reverse or Kentucky to Kentucky transports did require a license. In its operations, at least on the basic and intermediate levels, Christ Hospital was in competition with appellant, NKEMS.
Christ Hospital sought a certificate of need through the Commission for Health Economics Control in Kentucky (CHECK) which procedure is governed by KRS 216B.040(2)(a)(2) in that an applicant must demonstrate that the service it seeks to provide meets the criteria set forth in the State Health Plan. Following a hearing, CHECK denied the certificate for the reason that the application failed to meet criteria demanding consistency with the plan and the need for such services. The criteria in issue are:
The application shall document that the appropriate legislative body (e.g. fiscal court or city counsel) for the proposed service area supports the request for additional vehicles.
As to this standard, CHECK concluded:
The proposal is inconsistent with Criterion 1 in that no letters of support were submitted from the appropriate legislative bodies in Carroll, Gallatin, Boone, Campbell, Owen, Grant or Pendleton Counties.
With reference to the “need” criterion, which is self-explanatory, CHECK determined:
The proposal is inconsistent with the need portion of Criterion 2. Although the applicant contends that the proposed service is unique and that no existing service in the Northern Kentucky ADD provides the availability of an RN 24 hours a day, 7 days a week, the evidence presented showed that at least one existing service, NKEMS, has 11 RNs on its staff on call at all times to provide this needed service. No documentation was submitted for this proposal indicating that patients in the proposed service area were going without needed ambulance services because of the lack of available services. Additionally, since the applicant’s service ceased in Kentucky in November, 1990, NKEMS has picked up the applicant’s runs and is providing satisfactory service including advanced life support services. NKEMS now has a contract with St. Luke Hospitals East and West to provide transportation services. Likewise, Commonwealth EMS, which is currently licensed for 54 ambulances, has a contract with St. Elizabeth Hospital. Just the addition of NKEMS’ services decreased Commonwealth’s business by two-thirds. Therefore, testimony revealed that should this application be approved, at least two existing services in *898 the NKADD, NKEMS and Commonwealth, would suffer financially and go out of business. Finally, it appears that the applicant could continue to operate a viable ambulance service even if this proposal is disapproved since historical data indicates that over half of The CHC MCU’s funds involve Kentucky destinations which would not require a certificate of need if the run’s origin is Ohio and at least 11 Ohio hospitals and also other rural hospitals and nursing homes would continue to use The CHC MCU.
The application in question carried the endorsement of Northern Kentucky Area Development District Health Council Board of Directors but no supportive documentation from eight of the nine counties composing the ADD. CHECK found that the approval of the district to be insufficient to comply with criterion one while the circuit court concluded:
Christ Hospital obtained approval of its plan from the NKADD. The State Health Plan establishes the ADD of the basic health planning unit in Kentucky. The members of the ADD Boards included county/judge executives, mayors, members of local legislative bodies or their staff. KRS Chapter 147A establishes the ADD as the appropriate body for region-wide planning and development. The court finds that the NKADD was an appropriate legislative body within the meaning of the State Health Plan. The Commission’s finding to the contrary is not supported by substantial evidence and is clearly erroneous.
We have examined KRS 147A.080 designating the powers of an ADD district acting through its board of directors as well as KRS 147A.090 specifying the duties of those directors. It is immediately apparent that the functions of the agency are planning, advisory and grant administration. Absolutely nothing contained in the statutes remotely approaches a legislative act. Moreover, KRS 147A.120 expressly prohibits an ADD from interfering with functions, powers or duties of the Commonwealth or its political subdivisions. County and city legislative bodies are political subdivisions of the state.
When we envision a legislative body we see one created by the Constitution or by the General Assembly pursuant to the Constitution. It is composed of members elected by the people and charged with duties to make laws for the community represented by them. Burke v. Wood, 162 F. 533 (S.D.Ala.1908). An administrative agency is created to perform a specific function(s) and if there is any reasonable doubt concerning a particular power it should be resolved against the board. Board of Education of City of Newport v. Scott, 189 Ky. 225, 224 S.W. 680 (1920). In the case at bar we conclude that the ADD is not a legislative body for the purpose of the state health plan administration or for any other purpose. Assuming, arguendo, that it might have been, it still would not have qualified as a supporting agency for the criteria specifies “fiscal court or city council.” The circuit court clearly erred for reaching the contrary conclusion.
As to the determinations of the court below with reference to the “need and necessity” criterion, we note that they are a total and reverse substitution for that of CHECK which was the fact-finder in this cause. The legal principle involved has been oftentimes addressed by our appellate tribunals, and even though we should not have to restate it, we again will repeat our views as set forth in Piper v. Singer Co., Inc., Ky.App., 663 S.W.2d 761, 763 (1984):
It requires no citation of authority to point out that upon appeal from an administrative agency, charged with the duty of fact finding, that a reviewing court is not free to substitute its judgment for that of the agency unless the latter acted in an arbitrary or capricious manner. In the ease at bar, there is not the slightest suggestion that the referee or commission acted as such. It is also axiomatic that the court should not make its own findings of fact. Although the criteria for court review of administrative determinations is somewhat elusive, one of the best statements addressing the problem is found in Commonwealth v. Frost, 295 Ky. 137, 172 S.W.2d 905, 909 (1943), to the effect:
There are many factors affecting the scope of judicial review of administrative *899 action. Neither its extent nor limitation can be closely defined. In the absence of statutory authority in a particular case, it may be said that the courts will not, under the pretext of finding a remedy for one believed to be wronged, assume to exercise a discretion which the people, acting through their Legislature, have lodged in administrative officers and agencies.
As said in Bancamerica-Blair Corporation et al v. State Highway Commission et al, 265 Ky. 100, 95 S.W.2d 1068, 1071: “The very essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed. The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment.”
Judicial discretion is a thing apart, and administrative discretion will not be disturbed by the courts unless it is abused or unreasonably exercised or is otherwise unlawful, (citations omitted)
The judgment is reversed.
All concur.