RENDERED: APRIL 27, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2022-SC-0025-DG

FRIENDS OF LOUISVILLE PUBLIC ART, LLC; LOUISVILLE HISTORICAL LEAGUE, INC.; MARK THOMPSON; GERALD R. TONER; DEANNA M. O'DANIEL; JAMES PRICHARD; CHARLES NICHOLAS MORRIS; MARTINA KUNNECKE; AND STEVE WISER
                                                                    APPELLANTS


                          ON REVIEW FROM COURT OF APPEALS
V.                                NO. 2020-CA-1298
                       JEFFERSON CIRCUIT COURT NO. 19-CI-003550


LOUISVILLE/JEFFERSON COUNTY METRO HISTORIC LANDMARKS AND PRESERVATION DISTRICTS COMMISSION; LOUISVILLE/JEFERSON COUNTY METRO GOVERNMENT; LOUISVILLE METRO GOVERNMENT CHEROKEE TRIANGLE ARCHITECTURAL REVIEW COMMITTEE
                                                                     APPELLEES


**OPINION OF THE COURT BY CHIEF JUSTICE VANMETER**

**REVERSING AND REMANDING**

An administrative hearing in Kentucky must provide a modicum of due process so as to avoid being arbitrary. Typically, judicial review is limited to determining whether the administrative body acted within its granted powers, afforded the parties procedural due process, and made determinations supported by substantial evidence. In this case, the primary issue we resolve

is whether the Court of Appeals and Jefferson Circuit Court erred in affirming the Louisville/Jefferson County Metro Historic Landmarks and Preservation Districts Commission's ("Landmarks Commission") approval of the Louisville/Jefferson County Metro Government's ("Louisville Metro") 2022 application to remove a statue when Louisville Metro employees participated as members of the Commission. We hold that the lower courts did err and therefore reverse and remand to the circuit court with directions to set aside the Commission's decision as arbitrary.

## I.     Facts and Procedural Background

In August 2018, Louisville Mayor Greg Fischer announced that the Louisville Metro intended to move a statue located in the historic Cherokee Triangle Preservation District.[1] In order to do so, however, a certificate of appropriateness was required from the Cherokee Triangle Architectural Review Committee ("ARC").[2] Accordingly, in December 2018, Louisville Metro filed an application with the ARC.

---

[1] The Louisville Courier-Journal reported the following Twitter tweet from Mayor Fischer:

> @GregFischerLou:   I am announcing that the city will be moving the Castleman & Prentice statues.  My decision is based on the findings of our Public Art & Monuments Advisory Committee — Louisville must not maintain statues that serve as validating symbols for racist or bigoted ideology. 1/8

> 4:01 PM · Aug 8, 2018.

Louisville Courier-Journal, Aug. 8, 2018 (https://www.courier-journal.com/story/news/local/2018/08/08/louisville-move-controversial-castleman-prentice-statues/939006002/) (last visited Mar. 23, 2023); See "Erasing bigotry, not the history," *Courier-Journal*, Aug. 10, 2018, p. A3.

[2] Under LOUISVILLE/JEFFERSON CNTY., KY., METRO GOV'T ORDINANCES ("Ordinance") § 32.252, Louisville Metro created the Cherokee Triangle Preservation

By ordinance, the ARC is comprised of seven members: the Director of the Department of Codes and Regulations or his/her designee, two members of the Landmarks Commission appointed by its Chairperson, and four members who are appointed by the Commission and approved by the Louisville Metro Council. Ordinance § 32.253(C). At a January 2019 hearing on the application, six members of the ARC were present. One of those members was David Marchal, a Louisville Metro officer and employee, who occupied the position of Deputy Director of Develop Louisville. The parties agree that this position is a position subject to appointment and removal by the Mayor.[3] At the hearing, a Louisville Metro Historic Preservation Officer presented a report concerning the application and public comment was permitted. At the conclusion, the ARC deadlocked, with three votes, including Marchal's, to approve the application and three to deny. Due to the tie vote, the application was deemed denied, Ordinance § 32.257(I), and the ARC failed to issue any required findings of fact. Ordinance § 32.257(J).

Louisville Metro timely appealed this denial to the Landmarks Commission. Like the ARC, the Landmarks Commission is a creature of

---

District as a Historic Preservation District. The Preservation Ordinances provide that before any exterior alteration or demolition, including the moving, of a structure may occur, a certificate of appropriateness is required. Ordinance § 32.252(D), § 32.257(B). These ordinances are authorized under Kentucky Revised Statute ("KRS") 82.026, which permits "[t]he legislative body of any city [to] enact ordinances establishing local historic preservation commissions[.]"

[3] This fact was admitted in oral argument before this Court. Additionally, Friends pled in its complaint that "Marchal is an officer and employee of the applicant Louisville Metro." Louisville Metro's answer admits this fact.

3

ordinance. Ordinance § 32.254(A). Its members consist of 13 members, ten of whom are appointed by the Mayor and approved by the Metro Council; the Director of the Department of Codes and Regulations or his/her designee: the Planning Director of the Louisville and Jefferson County Department of Planning and Design Services; and one member appointed by the President of the Council and who is not a Council member. Significantly, participants in the appeal decision were Robert Kirchdorfer, Director of the Department of Codes and Regulations, and Emily Liu, Planning Director of the Louisville and Jefferson County Department of Planning and Design Services. The parties agree that, like Marchal, both Kirchdorfer and Liu occupy positions subject to appointment and removal by the Mayor.[4] Following its hearing, at which much discussion addressed the failure of the ARC to make required factual findings, the Commission voted 5-3 to approve the application. Kirchdorfer and Liu voted with the majority.[5]

Following the Landmarks Commission decision, the parties opposing the application filed a complaint and appeal with the Jefferson Circuit Court. The

---

[4] Again, these facts were admitted in oral argument before this Court. Additionally, Friends pled in its complaint that each Liu and Kirchdorfer is "an officer and employee of the applicant Louisville Metro." Louisville Metro's answer admits these facts.

[5] Kirchdorfer, as Director of the Department of Codes and Regulations, serves *ex officio*, on both the ARC and the Landmarks Commission. Since any member who serves on both the ARC and the Landmarks Commission is prohibited from voting twice, Ordinance § 32.257(K), Kirchdorfer strategically did not vote when the ARC considered the application. The record is unclear as to whether Kirchdorfer was present at the ARC hearing or appointed a designee, as permitted by Ordinance § 32.253(C), to sit. By contrast, Landmarks Commissioners Fuller and Morris who had voted to deny the application at the ARC hearing were disqualified from voting at the Landmarks Commission hearing.

plaintiffs were Friends of Louisville Public Art, LLC, Louisville Historical League, Inc., Mark Thompson, Gerald R. Toner, Deanna M. O'Daniel, James Prichard, Charles Nicholas Morris, Martina Kunnecke and Steve Wiser (collectively referred to herein as "Friends"). The circuit court affirmed the Landmarks Commission, holding that its decision was not arbitrary within the meaning of *American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Commission,* 379 S.W.2d 450, 456 (Ky. 1964), since its determination was supported by substantial evidence. *See Ky. State Racing Comm'n v. Fuller,* 481 S.W.2d 298, 308 (Ky. 1972) (substantial evidence is that which has sufficient probative value to induce conviction in the minds of reasonable men). The circuit court did not explicitly address Friends' argument concerning the conflict of interest of Louisville Metro employees serving on the Landmarks Commission's review of their own employer's application. Friends appealed to the Court of Appeals, which similarly affirmed the Landmarks Commission. We granted Friends' motion for discretionary review.

## II. Standard of Review

The judicial standard of review of administrative decisions is well-known and oft stated. As correctly noted by the lower courts in this matter, our predecessor court's decision in *American Beauty Homes* remains the seminal case as to judicial review of administrative action. In that case, the court held that review is concerned with the question of *arbitrariness.* 379 S.W.2d at 456. That determination is comprised of three elements: 1) whether the agency acted

5

in the exercise of its statutory powers; 2) whether a party affected by an administrative order received procedural due process; and 3) whether the agency action is supported by substantial evidence. *Id.* The court also noted that "[a]s a general rule the yardstick of fairness is sufficiently broad to measure the validity of administrative action." *Id.* at 456 (citing *Commonwealth ex rel. Meredith v. Frost,* 295 Ky. 137, 145-46, 172 S.W.2d 905, 909 (1943))

### III.   Analysis

In this case, Friends argues that the participation of Kirchdorfer and Liu resulted in a denial of procedural due process.[6] We agree.

As a general rule, in an administrative setting, procedural due process merely requires "a hearing, the taking and weighing of evidence if such is offered, a finding of fact based upon a consideration of the evidence, the making of an order supported by substantial evidence, and, where the party's constitutional rights are involved, a judicial review of the administrative action." *Hilltop Basic Res., Inc. v. Cnty. of Boone*, 180 S.W.3d 464, 469 (Ky. 2005) (quoting *Morris v. City of Catlettsburg*, 437 S.W.2d 753, 755 (Ky. 1969)); *see also Ky. Cent. Life Ins. Co. v. Stephens*, 897 S.W.2d 583, 590 (Ky. 1995) (stating "[p]rocedural due process is not a static concept, but calls for such procedural protections as the particular situation may demand[]"). Pointedly, in *Hilltop*, we also stated that nowhere in the list is found the "right to an

---

[6] While Marchal's participation on the Committee was similarly impermissible in this instance, we are reviewing the decision of the Landmarks Commission, as affirmed by the circuit court and Court of Appeals.

6

impartial tribunal" since that right cannot be guaranteed in the administrative setting. 180 S.W.3d at 469. Additionally, "[i]n the administrative or legislative context, . . . the concept of impartiality is, by necessity and by function, more relaxed and informal." *Id.* at 468.

We, however, did not grant *carte blanche* to a party to have its own employees serve as judges: "decision makers are not free to be biased or prejudicial when performing nonjudicial functions. To the contrary, any bias or prejudicial conduct which demonstrates 'malice, fraud, or corruption' is expressly prohibited as arbitrary. **Furthermore, decisions tainted by conflicts of interest or blatant favoritism are also prohibited as arbitrary**." *Hilltop*, 180 S.W.3d at 469 (emphasis added) (citations omitted); *see also* MODEL CODE OF JUD. CONDUCT FOR STATE ADMIN. L. JUDGES Rule 2.11 (AM. BAR ASS'N 2018) (providing "[a]n [Administrative law Judge ('ALJ')] shall disqualify himself or herself in any proceeding in which the ALJ's impartiality might reasonably be questioned[]"). As such, the decision-making participation in this matter by Louisville Metro employees is an inherent and intolerable conflict of interest, within the holding of *Hilltop*.[7]

Stated more plainly, Louisville Metro employees, Marchal, Liu and Kirchdorfer, had a patent conflict of interest that any reasonable person would

---

[7] The inherent nature of this conflict is readily demonstrated by, for example, if the chief executive, general counsel, or any other employee of Louisville Gas & Electric were appointed to an administrative board such as the Landmarks Commission and LG&E filed an application for a Certificate of Appropriateness. Everyone would reasonably question that person's impartiality and agree that that employee could not properly sit in determining the application.

recognize, and each of them was, as a legal matter, disqualified from participation in any determination which was initiated by their employer. Thus, their participation in the Certificate of Appropriateness determination resulted in a denial of procedural due process for Friends and rendered the Landmarks Commission's decision inherently arbitrary. The Jefferson Circuit Court and Court of Appeals erred in determining otherwise.

We do not hold that all of the Mayor's appointees were disqualified from serving on the Landmarks Commission. Of the non-Louisville Metro employee Commission members, five voted to deny the application: two at the ARC hearing and three at the Commission hearing. This fact demonstrates that these members were not beholden to Louisville Metro or the Mayor and were able to exercise independent judgment in this process. By so noting, we do not impugn the integrity and independent judgement of the non-Louisville Metro employee ARC or Commission members who voted to approve. Similarly, we do not impugn the integrity of Marchal, Kirchdorfer or Liu. Their employment and their being asked to sit in review of an application filed by their employer were sufficient to raise a reasonable question of impartiality such that recusal was required as a matter of law. *See Abbott, Inc. v. Guirguis*, 626 S.W.3d 475, 485 (Ky. 2021) (stating that "the issue is not whether [the judge] was in fact impartial. On the true issue, *i.e.*, whether his impartiality might reasonably be questioned, we hold that under the circumstances it was indeed reasonable for [Abbott] to question [the judge's] impartiality[]") (internal citation and quotation omitted). We further recognize good reasons why Louisville Metro employees

8

occupying these positions might be placed on boards such as the Landmarks Commission and the ARC, given their expertise and familiarity with the subject-matter.  In the vast majority of cases or applications, their participation is undoubtedly beneficial and permitted.  However, when their employer is the applicant, they are disqualified and must recuse.

While the foregoing adequately disposes of this appeal, Friends also raise another issue which we are compelled to address, the interpretation of the Landmarks Commission powers when the ARC fails to make requisite findings of fact.  *See* Ordinance § 32.257(K).  Ordinance § 32.257 details the process for Application for Certificate of Appropriateness.  The first ten subsections set forth the application requirements and the proceedings before the ARC. Ordinance § 32.257(A)-(J).  The final of these subsections emphasizes the importance of the ARC's written findings of fact, by stating,

> (I) **The [ARC] shall make a decision based upon a written finding of fact**, which shall approve the application, approve the application with conditions, deny the application, or defer consideration of the application until a later meeting of the [ARC]. If the application is approved or approved with conditions, the applicant shall be issued a certificate or appropriateness.  Any application which fails to obtain at least three votes or the votes of a majority of the members present whichever is greater for approval or conditional approval shall be deemed to be denied.

> (J) **The staff and the [ARC] shall, in their decision making capacities, each make a written finding of fact based upon the information presented which supports a written conclusion that the application demonstrates or fails to demonstrate that the proposed exterior alteration is in compliance with the guidelines.**

Ordinance § 32.257 (emphasis added).

9

Following the ARC's action, any appeal to the Landmarks Commission is governed by Ordinance § 32.257(K). In part, this subsection addresses the proceedings at the Landmarks Commission's hearing:

> At the meeting to consider the appeal, the Commission shall review the application and the record of the prior proceedings and, at the discretion of the Chairman, may take additional testimony from the applicant, the property owner, appellant, or other interested parties for the purpose of supplementing the existing record or for the introduction of new information. Upon review of the record and any supplemental or new information presented at the meeting, the Commission shall make a written determination that the decision shall be upheld or overturned. **A decision of** the staff or **the [ARC] shall be overturned by the Commission only upon written finding that** the staff or **the [ARC] was clearly erroneous as to a material finding of fact related to whether the proposed exterior alteration complied with guidelines.**

Ordinance § 32.257(K) (emphasis added). We highlight these requirements for the ARC's written findings since, by Ordinance, the Landmarks Commission's ability to overturn the ARC's decision can only be based on a written finding that the ARC was clearly erroneous as to a material finding of fact. The proceeding was, thus, compromised by the ARC's failure to make the required written finding of fact. In the absence of those required findings, the Landmarks Commission was unable to satisfy the requirements of the Ordinance.

Finally, we underscore that we express no opinion as to the fate of the statue in question. That is ultimately a decision for the citizens of Louisville/Jefferson County. Those citizens, however, having created a process for that decision must abide by that process, and must not act arbitrarily in the process.

10

## IV.    Conclusion

This matter is remanded to the Jefferson Circuit Court with direction to set aside the Landmarks Commission's decision to grant the Certificate of Appropriateness.

All sitting.  Conley, Keller, Lambert, Nickell and Thompson, JJ., concur. Bisig, J., dissents by separate opinion.

BISIG, J., DISSENTING BY SEPARATE OPINION: Respectfully, I must dissent. The issue regarding the appropriateness of the Castleman statue has far-reaching impact for the Louisville community.  Certainly, citizens may or may not agree with the Landmarks Commission decision. The limited role of this Court is to review whether the Commission acted outside its authority or disregarded due process.

The majority's conclusion that Liu and Kirchdorfer were required to recuse is contrary to this Court's holding in *Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464 (Ky. 2005).  In *Hilltop*, we began by noting that participants in *judicial* proceedings have the right to an impartial tribunal and that *judges* "are held to very stringent guidelines and rules of conduct in order to ensure the highest possible degree of impartiality in both fact *and appearance*."  180 S.W.3d at 468 (emphasis added).  We then distinguished procedural due process rights in the *administrative* setting, where "the concept of impartiality is, by necessity and by function, more relaxed and informal." *Id.* Of particular relevance here, we specifically noted that in the administrative context, only "bias or prejudicial conduct which demonstrates 'malice, fraud, or

11

corruption'" or "decisions tainted by conflicts of interest or blatant favoritism" violate due process rights. *Id.* at 469. *Hilltop* thus makes clear that while a mere appearance of impropriety warrants recusal in the judicial context, only actual bias, prejudice, conflicts, or favoritism require recusal in an administrative setting.

The majority notes that Liu and Kirchdorfer are Louisville Metro employees. Then without further analysis, it summarily asserts that Liu and Kirchdorfer had "an inherent and intolerable conflict of interest, within the holding of *Hilltop*." Majority Op. at Part III. However, to align with the holding in *Hilltop*, the majority must explain how Liu and Kirchdorfer's roles as Louisville Metro employees resulted in either "bias or prejudicial conduct which demonstrates 'malice, fraud, or corruption,'" or a decision "*tainted by* conflicts of interest or blatant favoritism." *Hilltop*, 180 S.W.3d at 469 (emphasis added). Instead, the majority seems to pivot to the inapplicable appearance of impropriety standard, as it must given the lack of any actual evidence of record that the votes of either Liu or Kirchdorfer were influenced in any way by their employment with Louisville Metro. *See* Majority Op. at Part III ("[W]e do not impugn the integrity of . . . Kirchdorfer or Liu. Their employment and their being asked to sit in review of an application filed by their employer were sufficient to raise reasonable *questions* of impartiality such that recusal was required as a matter of law.") (emphasis added). I therefore disagree both with the majority's conclusion that Liu and Kirchdorfer operated under actual

12

conflicts of interest and with its departure from *Hilltop* in applying the judicial appearance of impropriety standard to this administrative setting.

I likewise disagree with the majority's conclusion that the Commission could not act on Louisville Metro's application in the absence of written findings by ARC. While I acknowledge the lack of written findings by ARC, the Commission's actions were in compliance with local ordinance. Contrary to the majority's conclusion, the relevant ordinance does not state the Commission may overturn ARC only where a *written* material finding of fact by ARC was erroneous; rather, the ordinance simply states that the *Commission's* finding of error must be written. Louisville Ordinance § 32.257(K). The discussion of ARC's procedural defects clouded the Commission's ultimate approval of the request to remove the statue. However, review of the record shows it considered the application, reports and other information in reaching its conclusion. Thus, because there is no evidence that the Commission's decision was tainted by an actual conflict of interest, and because the Commission properly made its decision after consideration of the relevant information and hearing public comment, I find no error in its overturning of the ARC decision. I would therefore affirm the trial court and the Court of Appeals.

COUNSEL FOR APPELLANTS:

Stephen T. Porter

Gerald R. Toner
O'Bryan Brown & Toner PLLC


COUNSEL FOR APPELLEES:

Peter Frank Ervin
Justice & Safety Cabinet, Office of Legal Services

Susan Klein Rivera
David A. Sexton
Assistant Jefferson County Attorney