RENDERED:  MARCH 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0191-MR

JEFFREY SCOTT; DANIEL BARNES;
DEBOARH GRISWOLD; THOMAS B.
GRISWOLD; WILLIAM J. HALL;
ROGER HOPGOOD; THOMAS
MATTHEW JOHNSON; VIRGINIA
JOHNSON; LAURA SUE LANDRUM;
WARREN LANDRUM; DARLENE
LANDRUM-BARNES; STEVEN
SCHREINER; DEBORAH SCOTT;
SALLY SIEBERT; AND JAMES TARTER                    APPELLANTS


                    APPEAL FROM JESSAMINE CIRCUIT COURT
v.                  HONORABLE C. HUNTER DAUGHERTY, JUDGE
                    ACTION NO. 21-CI-00711


JESSAMINE COUNTY-CITY OF
WILMORE JOINT BOARD OF
ADJUSTMENT; BONNIE BANKER;
KEITH BARKER; ALTON BOONE;
ROGER BROCK; LINDA HOSTETTER;
PEPPERHILL DAY CAMP A/K/A
PEPPERHILL FARM; PEPPERHILL
FARM DAY SCHOOL AND CAMP;
PEPPERHILL SUMMER CAMP;
PEPPERHILL, INC., A KENTUCKY
CORPORATION; WEBSTER RUSSELL;

JOHN SLUGANTZ; AND
BARBARA W. STEPHENS                                              APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  ACREE, COMBS, AND ECKERLE, JUDGES.

ECKERLE, JUDGE:  An agricultural camp/school in Jessamine County, Kentucky was granted a conditional use permit (CUP).  Some local residents opposed and appealed the granting of the CUP.  We find no reversible error in any of the raised issues; hence, we affirm the Trial Court's Opinion and Judgment upholding the granting of the CUP.

## BACKGROUND

Pepperhill Day Camp (Pepperhill)[1] operates a "Day School" at 1127 Baker Lane in Jessamine County, Kentucky.  The subject property is almost 90 acres in size and located off Baker Lane, a narrow 12-to-18-foot-wide road.  The land is zoned A-1 agricultural, which permits schools to operate under a CUP.  Pepperhill has thrice obtained a CUP since its inception.  The first CUP, granted in 1977, had two conditions of approval, both due to traffic concerns, namely the

---

[1] Multiple entities with variants of the "Pepperhill" name are listed as Appellees in the instant case.  Our references herein to "Pepperhill" include Appellee Barbara W. Stephens and all such applicable entities.

camps would: (1) not exceed 100 children; and (2) operate only during public school vacations. That CUP was revoked in 1991 due to violations of the conditions. A second CUP was granted immediately thereafter with new conditions:

(1) Day camp must operate with no limit on the number of children

(2) 90% of children must be bussed to the location

(3) Overnight camping must be in conjunction with the day camp

(4) Picnics and parties are allowed

(A) 500-person limit

(B) Between 9 am and 6 pm

(C) No PA system, bullhorns or live bands

(D) No outside lighting except security lights

Operations occurred for 30 years pursuant to these conditions. Complaints began in 2021 when COVID-19 precautions prohibited bussing, leading to traffic issues on the narrow roadway. According to the Staff Report, "Once the restrictions were lifted, the planning office issued a violation letter concerning the failure to comply with the bussing requirements of the CUP." Pepperhill did not comply with the 1991 conditions. The 1991 CUP was eventually revoked, and Pepperhill filed a request for a third CUP.

Pepperhill included "Justifications" for the request, showing that it had over 160 letters and petitions in support of its requested CUP to operate a school in the A-1 Agricultural zone. Its Justifications noted that the Jessamine County-City of Wilmore Joint Board of Adjustments (BOA) had, in 1991, interpreted the local zoning ordinance's definition of "school" to include Pepperhill, as its operations are primarily teaching and recreational.

In its third request for a CUP, Pepperhill averred that the conditions on Baker Lane had changed markedly over the past 50 years with the addition of several businesses and a subdivision. Pepperhill proffered that its impact on the area's traffic is minimal as it operates at most 12 weeks out of the year during the summer months. It noted that a strong bussing requirement would pose a severe, if not impossible, restriction, as finding CDL drivers is challenging in a post-COVID-19 world. Its Justifications cited to numerous school districts and statistics both locally and nationally showing significant impacts on bussing due to the post-COVID-19 CDL driver shortage. The Justifications also noted that COVID-19 vaccines were not then available for children under the age of 12, which included a large portion of its clientele, causing an increased risk for infectious exposure to adults and children if they were all required to ride on a bus together.

The Justifications suggested potential solutions to any traffic impacts Pepperhill might cause during its 12-week operations, including: using 15-passenger vans (no CDL is required to operate such vans) to drive students; identifying rideshare and drop-off locations for carpooling; and assigning staggered drop-off and pick-up time slots to alleviate congestion during high-traffic times.

Jeffrey Scott and other nearby landowners (Opponents) opposed the CUP. A multi-hour-long BOA hearing was held on November 18, 2021. Pepperhill and Opponents presented considerable evidence, especially regarding traffic and noise issues. Pepperhill's evidence included testimony from an HR specialist about the dearth of CDL drivers. Additionally, a Staff Report was created and presented to the BOA outlining the history of Pepperhill and its CUPs, a description of the proposed use, a reference of the applicable statutes and regulations, and a "Staff Analysis" of the proposed CUP. The Staff Report ultimately recommended the CUP be granted with the following conditions:

1. Camp activities only allowed between May and August

2. 90% of students shall be transported by bus or 15-passenger van

3. Overnight camping must be in conjunction with the day camp

4. Limit number of children to 200 per day

Members of the BOA deliberated before unanimously approving the CUP with the following conditions listed in the minutes of the hearing:

> 1. Pepperhill school/camp in-person activities are only allowed for the months of May, June, July, and August.

> 2. Overnight camping must be in conjunction with the day camp.

> 3. Pepperhill shall be allowed to have school/camp students attend via personal transportation, with the number of personal vehicles capped at 100 or a number of personal vehicles equal to 50% of the number of students enrolled for the applicable session, whichever is less. All other student transportation shall occur by bus or commercial van, arranged with the assistance of Pepperhill.

> 4. Pepperhill shall include in promotional and enrollment materials the options to attend via bus or commercial van arranged with the assistance of Pepperhill[.]

Opponents next filed a Complaint in Jessamine Circuit Court (Circuit Court) raising nine separate counts, each claiming various reasons why the BOA's action in granting the CUP was arbitrary and capricious. After parties filed answers, they established a briefing schedule. As the Complaint was a statutory appeal pursuant to KRS[2] 100.347, which was constrained to the evidence submitted to the BOA, the Circuit Court ordered the BOA to submit the "record as

---

[2] Kentucky Revised Statutes.

is." The BOA filed of record 13 documentary items relied upon by the BOA in making its decision and two CDs containing the November 18, 2021, hearing. The parties submitted briefs, and oral arguments were set before the Circuit Court. The Circuit Court then, on December 5, 2022, entered an Opinion and Judgment (Opinion).

The Circuit Court examined the BOA's decision for arbitrariness pursuant to *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450 (Ky. 1964), and affirmed the BOA's decision, finding the BOA did not act arbitrarily when granting the CUP. The Parties then litigated CR[3] 55.02, 59.05, and 60.02 motions, all of which were denied. Finally, the Opponents filed a notice of appeal. Additional background information is discussed below.

## ANALYSIS

Opponents raise four issues on appeal. We have grouped two of them together and analyze them below following a brief recitation of the standards for appealing a BOA decision.

"KRS 100.347(1) creates a statutory right to appeal from a final action of a board of adjustment." *Kenton County Board of Adjustment v. Meitzen*, 607 S.W.3d 586, 592 (Ky. 2020). These appeals from an administrative body are a

---

[3] Kentucky Rules of Civil Procedure.

-7-

matter of legislative grace, not a matter of right; thus, failure to comply strictly with the statutory requirements are fatal. *Id*. at 593-94 (citations omitted).

> The standard of review of administrative decisions is well established:
>
>> As correctly noted by the lower court[] in this matter, our predecessor court's decision in *American Beauty Homes* remains the seminal case as to judicial review of administrative action. In that case, the court held that review is concerned with the question of *arbitrariness*. 379 S.W.2d at 456. That determination is comprised of three elements: 1) whether the agency acted in the exercise of its statutory powers; 2) whether a party affected by an administrative order received procedural due process; and 3) whether the agency action is supported by substantial evidence. *Id*. The court also noted that "[a]s a general rule the yardstick of fairness is sufficiently broad to measure the validity of administrative action." *Id*. at 456 (citing *Commonwealth ex rel. Meredith v. Frost*, 295 Ky. 137, 145-46, 172 S.W.2d 905, 909 (1943)).

*Friends of Louisville Public Art, LLC v. Louisville/Jefferson County Metro Historic Landmarks and Preservation Districts Comm'n*, 671 S.W.3d 209, 213 (Ky. 2023) (alterations added and in original). *See also Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 470 (Ky. 2005) ("[W]e agree with Judge Knopf that Hilltop's right to receive fair and nonarbitrary treatment before the Fiscal Court is adequately protected . . . by adhering to the traditional standards which are set forth in *American Beauty Homes*, *supra*."). "Substantial evidence is defined as 'evidence of substance and relative consequence having the fitness to induce conviction in the minds of reasonable [persons].'" *Kentucky*

*Unemployment Ins. Comm'n v. Landmark Community Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 579 (Ky. 2002) (quoting *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998)) (alterations in original).

Under these standards, "A reviewing court may not substitute its judgment for that of an administrative agency even though it might have reached a different result." *Allen v. Woodford County Bd. of Adjustments*, 228 S.W.3d 573, 575 (Ky. App. 2007) (citing *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308-09 (Ky. 1972)).

## I.   Was the BOA decision arbitrary because it was not supported by substantial evidence?

Opponents first claim both that the Circuit Court (in its KRS 100.347 review for arbitrariness) and the BOA (in its decision to grant a CUP) erred. Specifically, Opponents claim the BOA's decision was arbitrary and not supported by substantial evidence due to the significant traffic issues and the harm granting the CUP would bring to the Opponents, who further claim the BOA did not give the Staff Report meaningful consideration.

We have reviewed the record, including the hearing and the minutes, and discern no arbitrariness in the BOA's action granting the CUP. *See* KRS 100.111(6) (defining CUP). Pepperhill presented evidence of substance regarding the traffic and its mitigation measures. Its evidence demonstrated substantial

difficulties obtaining drivers with CDLs to bus children in a post-COVID-19 world. Its evidence further demonstrated the desire and need for Pepperhill's summer classes, as shown by the countless professionals and parents who testified to the short- and long-term positive impacts Pepperhill has on its clients. Its evidence demonstrated hundreds of children would be educated in agriculture during Pepperhill's summer camps at this agriculturally-zoned property. Its evidence also supported the transportation conditions ultimately placed on Pepperhill's CUP. All of this substantial evidence supports the finding that the granting of the CUP and the conditions placed on the CUP were not arbitrary decisions of the BOA. *American Beauty Homes*, *supra* at 456.

Opponents argue that the BOA's decision was flawed and not supported by substantial evidence because it did not adopt the Staff Report's suggested conditions. However, it points us to neither any law stating a BOA must adopt a Staff Report's suggested conditions nor even follow a Staff Report's recommendation to deny or approve an application for a CUP. Nonetheless, in our independent review, we have found no such jurisprudence. Indeed, it would likely constitute arbitrary action if a BOA were required to follow a Staff Report's recommendation rather than conduct its own, independent analysis of the evidence. Accordingly, we reject this claim.

Opponents also argue that the conditions adopted by the BOA are wholly or partially meaningless and unenforceable. For example, Opponents claim the May through August operational condition and the overnight camping condition are meaningless, and the 100-car condition is unenforceable. But the question before us on this statutory appeal of an administrative decision is simply whether the action was arbitrary, *i.e.*, unsupported by substantial evidence. Each of these conditions is supported by substantial evidence, as is the application's overall grant. *American Beauty Homes*, *supra* at 458. Accordingly, we affirm the Circuit Court on these issues.

## II. Did the BOA exceed its authority?

Opponents also claim the BOA exceeded its authority because Pepperhill "acknowledged that it had used a 'private security force' to stop and regulate traffic on U.S. Highway 27, a federal highway." Appellant's Brief at 11. It appears that prior to its 2021 application, Pepperhill hired personnel to direct traffic off of Baker Lane and onto U.S. Highway 27. Opponents claim Pepperhill's actions constitute illegal acts by directing traffic on a federal highway; thus, the BOA could not have granted a CUP that condoned such illegal acts.

The Circuit Court rejected this argument. We agree. This arbitrariness issue is whether the BOA exceeded its statutory authority when granting the CUP. *American Beauty Homes*, *supra* at 456. Assuming for a

moment that using private security is an illegal action, nothing on the face of the CUP nor its conditions requires such illegal actions. The conditions are wholly silent about private security. Accordingly, Opponents' argument on this issue fails, and we affirm the Circuit Court on this issue.

## III. Is Pepperhill a school?

Finally, Opponents argue that the Planning Director's Staff Report and the BOA erroneously interpreted the term "school" in Section 3.223 of the Jessamine County Zoning Ordinance to include Pepperhill's day camp. Pepperhill responds that the issue is neither properly before us, nor was it properly before the Circuit Court, as it was not timely challenged pursuant to KRS 100.261. Additionally, Pepperhill claims there is no substantive error, as the BOA is entitled to interpret its own regulations. The Circuit Court likewise rejected the claim, finding it was not properly preserved, substantively erroneous, and barred by *res judicata* because Pepperhill was defined as a school in the 1991 CUP.

We agree that the issue is not properly preserved. KRS 100.261 requires persons claiming to be "injuriously affected or aggrieved by an official action, order, requirement, interpretation, grant, refusal, or decision of any zoning enforcement officer" to file an appeal to the requisite board of adjustment within 30 days after receiving notice of the action. Here, the Staff Report notes that a "day camp" is not listed in the zoning ordinance as a conditional use. The Staff

-12-

Report notes that a "school" is listed as a conditional use, and Pepperhill had in 1991 been approved as a "school" under the CUP regulations. It does not appear that Opponents ever appealed or challenged the Staff Report's determination that Pepperhill was a school. Notably, Opponents do not cite to the record where this issue is preserved. Pepperhill points out that at the BOA hearing on the CUP application, none of the Opponents challenged the determination that Pepperhill was a school. It appears this issue was first raised on appeal to the Circuit Court. KRS 100.261, and case law precludes such action in this statutory appeal.

*Allen*, *supra*, is on point. There, a party was precluded from challenging that a use fell into the definition of "tourist home" because such issue was first raised on appeal to the Circuit Court. The application for a CUP to operate a "tourist home" was first reviewed by a Zoning Compliance Officer. The Officer noted that the applicable regulations did not define "tourist home," so the Officer provided a definition for the Woodford County Board of Adjustments to use. The Woodford County Board of Adjustments relied upon the definition and ultimately granted the CUP. Though the opponents in *Allen* were aware of the Officer's definition at the CUP hearing, they did not challenge that interpretation at the Woodford County Board of Adjustments. The issue was thus raised for the first time at the Circuit Court. Such action is prohibited. "The intent of KRS 100.261 is to prevent situations such as the one that has arisen here. The

-13-

Appellants' attempt to have the circuit court, and now this Court, review [the Officer's] interpretation was untimely." *Allen*, 228 S.W.3d at 576. *Compare with Keogh v. Woodford Cnty. Bd. of Adjustments*, 243 S.W.3d 369 (Ky. App. 2007) (interpretation properly raised on appeal).

*Allen* and KRS 100.261 control. Opponents were notified at least by the date of the hearing that Pepperhill's operation was being considered a "school" under the regulations. More than that, Opponents should have known since 1991 that Pepperhill was considered a "school" under the regulations. Opponents had ample time to raise the issue to the BOA. KRS 100.261 required that they raise the issue with the BOA. They failed to do so. Failure to follow the statutory requirements is fatal to review of the administrative decision. *Kenton County Board of Adjustment*, 607 S.W.3d at 593-94. Accordingly, we affirm the Circuit Court on this issue.

## CONCLUSION

We have thoroughly reviewed the record and found no arbitrary action by the BOA in granting Pepperhill's CUP application. Accordingly, we AFFIRM the Circuit Court's Order denying Opponent's appeal of this administrative decision.


ALL CONCUR.


-14-

BRIEFS FOR APPELLANTS:

Robert L. Gullette, Jr.
Nicholasville, Kentucky

BRIEF FOR APPELLEES
PEPPERHILL, INC. AND
BARBARA STEPHENS:

Justin Manning
Nicholasville, Kentucky

BRIEF FOR APPELLEE
JESSAMINE COUNTY-CITY OF
WILMORE JOINT BOARD OF
ADJUSTMENT:

Henry E. Smith
Nicholasville, Kentucky