RENDERED: JULY 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0415-MR

JEREMY NETTLES      APPELLANT

APPEAL FROM SCOTT CIRCUIT COURT
v.     HONORABLE MICHAEL DEAN, SPECIAL JUDGE
ACTION NO. 18-CI-00548

LISA K. WILLIAMS, AS
ADMINISTRATRIX OF THE ESTATE
OF KEITH G. BURNS, DECEASED      APPELLEE

AND

NO. 2023-CA-0416-MR

JON NOEL AND TOMMY ENRICCO      APPELLANTS

APPEAL FROM SCOTT CIRCUIT COURT
v.     HONORABLE MICHAEL DEAN, SPECIAL JUDGE
ACTION NO. 18-CI-00548

LISA K. WILLIAMS, AS
ADMINISTRATRIX OF THE ESTATE
OF KEITH G. BURNS, DECEASED      APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE: CETRULO, LAMBERT, AND TAYLOR, JUDGES.

LAMBERT, JUDGE: In these consolidated appeals, Jeremy Nettles, Scott County Sheriff's Deputy ("Nettles"); former Lieutenant Jon Noel[1] ("Noel") and former Officer Tommy Enricco[2] ("Enricco"), both of the Georgetown Police Department ("GPD") argue the circuit court erred when it refused to grant them qualified official immunity in this tort action. After careful review, we reverse the Scott Circuit Court.

### Factual and Procedural Background

On the evening of October 2, 2017, numerous calls came into the emergency dispatch service for both GPD and the Scott County Sheriff's Department ("SCSD"). Callers stated that a driver in a dark blue or black pickup truck was driving erratically, including running drivers off the road, speeding, and driving on the wrong side of the road. Enricco spotted the suspected vehicle and initiated a traffic stop because the headlights were not illuminated and the driver

---

[1] Noel is now retired.

[2] Enricco has since left GPD and started a career outside of law enforcement.

-2-

was driving at an inconsistent speed and was unable to maintain his lane. Keith Burns was driving the vehicle.

Upon making contact, Enricco noticed that Burns would not make eye contact. He also had a scab on his forehead that was bleeding and stated that it was from a fall earlier in the day. Enricco testified that Burns was unable to say why he was in Georgetown and was inconsistent in what he was saying. When asked by Enricco if he was on any type of medication, Burns stated he took blood pressure medication and blood thinners, but nothing that would impair his driving. He also stated he had recently been hospitalized due to a neurological disorder. Burns was unable to locate his driver's license, registration, or proof of insurance and was asked to step out of the vehicle. Enricco testified that, after Burns exited the truck, he began making eye contact and seemed more comfortable talking to him. Enricco did not notice any signs of intoxication (*e.g.*, Burns' speech was not slurred, there was no smell of alcohol or marijuana, he was steady on his feet, and his eyes were not bloodshot or glassy) and therefore did not suspect Burns of being under the influence of alcohol or drugs.

Although Enricco did not request backup, at some point during the stop, Noel and Nettles arrived separately because they were both in the vicinity. While Enricco went to his police cruiser to work on a citation, Noel and Nettles continued to talk with Burns. During his deposition, Nettles testified that he

remembered very little from the encounter, only that Burns thought he was in Richmond and seemed slightly confused. However, he did not think Burns was intoxicated or experiencing a medical need. Noel testified that Burns told him he was a diabetic and forgot to take his medication that day. In response, Noel called emergency medical services ("EMS") to the scene to rule out any potential medical issues. Burns complained to EMS about a fall earlier in the day and a resulting headache. According to an affidavit from EMS worker Andrew Stratton, who treated Burns at the scene, Burns was able to answer all questions correctly and coherently. He scored the highest possible score on the Glasgow Coma Scale assessment,[3] and although his blood pressure was elevated, his blood sugar was within normal range. EMS did not believe Burns presented a danger to himself or others. Although they offered to transport Burns to the hospital for further evaluation, Burns signed a refusal of treatment, which was witnessed by Noel.[4] Noel also testified that Burns did not show any signs of intoxication.

Enricco ultimately cited Burns for improper registration, failure to maintain required insurance, no/expired registration plates, and failure to illuminate headlights. Because the truck lacked insurance and proper registration,

---

[3] According to Stratton's affidavit, the assessment tests for alertness, as well as verbal and motor skills.

[4] Throughout the record, counsel for Burns' Estate argued both implicitly and explicitly that EMS stated Burns in fact needed further treatment, but he refused. This is refuted by the record.

Enricco called a tow truck and the vehicle was impounded. Noel asked Burns if he had any family that could pick him up, and Burns gave him the name and telephone number of his sister, Lisa Williams, who lives in London, Kentucky. Noel was able to speak with Lisa's husband, Les, who stated he would make the drive from London to Georgetown to pick up Burns. Because Burns was not under arrest, he was free to leave the scene after receiving the citation. However, because he no longer had a vehicle, Enricco offered to drive him anywhere within the Georgetown city limits to wait for his family. Burns stated he would wait at McDonald's, so Enricco dropped him off in the parking lot of a local McDonald's. Enricco testified that he saw Burns open the door to the restaurant before he left to continue his duties.

Tragically, several hours later, Burns was struck and killed by a vehicle while walking down a road approximately two miles from the McDonald's where Enricco had left him. Burns' sister Lisa Williams, as administrator of his estate, initially filed a lawsuit in federal court that was ultimately dismissed. Williams then filed the underlying complaint in Scott Circuit Court against Scott County Sheriff Tony Hampton, Georgetown Police Chief Michael Bosse, the City of Georgetown, and Enricco, Noel, and Nettles.[5] All defendants except the City of

---

[5] Williams also filed suit against the driver of the vehicle that struck Burns, as well as the owner of the vehicle. The claims against those defendants are ongoing and not part of this appeal.

Georgetown were sued only in their individual capacities. The lawsuit alleged, in relevant part, that Burns should have been taken into custody under KRS[6] 202A.041. After extensive discovery, all defendants filed motions for summary judgment based on various forms of immunity. The circuit court granted the motions of Sheriff Hampton, the City of Georgetown, and Chief Bosse. However, it determined that qualified official immunity did not apply to Noel, Enricco, and Nettles. This interlocutory appeal followed.[7]

## Standard of Review

The primary issue on appeal is whether a law enforcement official, when sued in their individual capacity, is afforded qualified official immunity when deciding whether to take a person into custody under KRS 202A.041. Our decision hinges on whether the statute confers ministerial or discretionary duties upon law enforcement. "The construction and application of statutes is a matter of law. Therefore, [appellate] Court[s] [review] statutes *de novo* without deference to the interpretations adopted by lower courts." *Commonwealth v. McBride*, 281 S.W.3d 799, 803 (Ky. 2009) (citation omitted). Qualified official immunity not only relieves an individual of liability but also provides relief from the burden of

---

[6] Kentucky Revised Statute.

[7] Orders denying claims of immunity are subject to interlocutory appeal. *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009).

defending an action.  *Id.*  As a result, summary judgment can play an important role in this regard.  *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).  Whether immunity is applicable to an individual is also a question of law that we review *de novo.  Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006).

**Analysis**

The application of qualified official immunity to an individual turns on whether the offending actions (in this case, the failure to arrest Burns pursuant to KRS 202A.041) were discretionary or ministerial.  The Kentucky Supreme Court has differentiated between discretionary and ministerial acts thusly,

> when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment.  63C Am. Jur. 2d, *Public Officers and Employees*, § 309 (1997).  Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id.* § 322; (2) in good faith; and (3) within the scope of the employee's authority.  *Id.* § 309; Restatement (Second) Torts, *supra,* § 895D cmt. g.  An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed.  *Franklin County v. Malone*, [957 S.W.2d 195, 201 (Ky. 1997)] (quoting *Upchurch v. Clinton County*, Ky., 330 S.W.2d 428, 430 (1959)).
>
> . . . .

Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. *Franklin County v. Malone, supra,* at 201. "That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature." *Upchurch v. Clinton County*, *supra*, at 430. *See also* Restatement (Second) Torts, *supra*, § 895D cmt. h; 63C Am. Jur.2d, *Public Officers and Employees*, §§ 324, 325 (1997).

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

We now turn to the applicable statute. The version of KRS 202A.041 in effect on October 2, 2017, provides, in relevant part only,

(1) Any peace officer who has reasonable grounds to believe that an individual is mentally ill and presents a danger or threat of danger to self, family, or others if not restrained shall take the individual into custody and transport the individual without unnecessary delay to a hospital or psychiatric facility designated by the cabinet for the purpose of an evaluation to be conducted by a qualified mental health professional. Upon transport of the person to the hospital or psychiatric facility, the peace officer shall provide written documentation which describes the behavior of the person which caused the peace officer to take the person into custody.

"Mentally ill person" is defined in KRS 202A.011(9) as

a person with substantially impaired capacity to use self-control, judgment, or discretion in the conduct of the person's affairs and social relations, associated with maladaptive behavior or recognized emotional symptoms where impaired capacity, maladaptive behavior, or

-8-

emotional symptoms can be related to physiological, psychological, or social factors[.]

Whether KRS 202A.041 imposes ministerial or discretionary duties upon law enforcement is a matter of first impression. However, when the Kentucky Supreme Court was confronted with the question of whether KRS 620.030[8] imposed discretionary or ministerial duties upon school officials, the Court looked carefully at the language of the statute and parsed it into both ministerial and discretionary functions. *Ritchie v. Turner*, 559 S.W.3d 822 (Ky. 2018). We believe the same approach is applicable in this case.

In the case at bar, numerous telephone calls came into emergency dispatch regarding Burns' driving. It is undisputed that law enforcement had a ministerial duty to respond to the emergency calls. It is undisputed that, once Enricco saw Burns in the same truck believed to be the subject of the 911 calls driving without his headlights illuminated, failing to maintain lanes, and failing to maintain a consistent speed, Enricco had a ministerial duty to initiate a traffic stop. However, once the stop was made and Enricco, Noel, and Nettles began their investigations, the decision to take Burns into custody – or not – pursuant to KRS 202A.041 was discretionary. It required personal judgment based on the facts available to them at the time, including their interactions with Burns and the result

---

[8] KRS 620.030 is Kentucky's mandatory reporting statute for children believed to be dependent, neglected, or abused.

of the assessment by EMS. *See Ritchie*, 559 S.W.3d at 838. Had law enforcement reasonably believed that Burns was mentally ill and a danger to himself or others, *then* they would have had a ministerial duty to take him into custody under KRS 202A.041,[9] but the investigation leading up to that point is necessarily discretionary. Williams argues the number and content of the telephone calls to emergency services should have prompted law enforcement to arrest Burns, but this argument is unavailing. While the 911 calls may have created a ministerial duty to respond, the investigation that occurred during the stop is discretionary. In this instance, the content of the calls to dispatch did not match the driving witnessed by Enricco.[10]

> The circuit court ruled that Enricco, Noel, and Nettles had a
>
> duty to take Burns into custody and transport him to a hospital or psychiatric facility [that] was fixed and imperative, and therefore ministerial, at least to the extent that they had reasonable grounds to believe Burns was mentally ill. This Court believes that whether they had such reasonable grounds is a question of fact for the jury.

---

[9] We note that the Kentucky General Assembly recently amended KRS 202A.041 to provide, in relevant part, that, "[a]ny peace officer who has reasonable grounds to believe that an individual is mentally ill and presents a danger or threat of danger to self, family, or others if not restrained **may** take the individual into custody . . . ." (Emphasis added.) This amended law goes into effect in July 2024.

[10] *See* KRS 431.005, which details under which circumstances a law enforcement officer may arrest a citizen for a felony or misdemeanor without a warrant.

This approach is the equivalent of arrest now, ask questions later. We agree that the duty to transport Burns to a hospital or psychiatric facility under the statute is ministerial, but *only if* law enforcement had reasonable grounds to believe Burns was mentally ill and a danger to himself or others. The determination of whether reasonable grounds exist is discretionary and must be made on-the-spot, not later by a jury. "[I]t is not in the public's interest to allow a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a police officer's discretionary professional duty. Such discretion is no discretion at all." *Meinhart v. Louisville Metro Gov't*, 627 S.W.3d 824, 835 (Ky. 2021).[11]

"Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. In most cases, good faith is presumed in the absence of evidence of bad faith. *Sloas*, 201 S.W.3d at 475.

> [I]n the context of qualified official immunity, "bad
> faith" can be predicated on a violation of a constitutional,

---

[11] Similarly, internal policies of GPD for dealing with persons of diminished capacity and those with mental illnesses require officers to "use reasonable judgment" to recognize behavior that could be a result of mental illness and that an individual should be taken into custody only when an officer "believes that the individual poses a substantial risk of harm to himself or others." The SCSD's policy regarding dealing with mentally ill citizens likewise instructs its officials to only arrest an individual believed to be mentally ill, but who has not committed a crime, when the officer "reasonably believes that the individual poses a substantial risk of harm to himself or others."

statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive.

*Yanero*, 65 S.W.3d at 523. The latter requires a subjective analysis. *Id.*

The United States Court of Appeals for the Sixth Circuit disposed of any constitutional claims and those arguments are not repeated here. *See Williams v. City of Georgetown, Kentucky*, 774 F. App'x 951 (6th Cir. 2019). Thus, we look to KRS 202A.041 to see if grounds exist for objective bad faith on the part of Enricco, Noel, and Nettles. There are no rights provided to citizens in the statute. Nor does the statute provide defined circumstances for when an individual is to be arrested. Accordingly, bad faith cannot be established through a violation of a statutory right under KRS 202A.041.

With regard to whether Enricco, Noel, and Nettles acted with willful or malicious intent, or a corrupt motive, in her response to the motion for summary judgment, Williams acknowledged that "[t]here is no evidence they *intended* that Burns suffer the fate he did." (Emphasis in original.) We agree.

The record before us is devoid of any showing of willful or malicious intent or a corrupt motive by law enforcement. Although Williams attempts to argue that GPD and SCSD have a repeating pattern of failing to arrest individuals under KRS 202A.041, this is not supported by the record. Although law

-12-

enforcement had concerns for Burns' physical health due to his statements that he was diabetic, had recently fallen, had a headache, and mentioned a neurologic disorder, these concerns were allayed once Burns was evaluated by EMS. He also did not exhibit any signs of intoxication. Once Burns was free to go after the traffic stop, rather than leave him on the side of the road, Enricco offered to drive him anywhere within the City of Georgetown to wait for his family. Burns chose to go to a local McDonald's, and Enricco dropped him off in the parking lot. Although Williams insists Burns should have been taken to the police station instead of McDonald's, she provides no support in the law for this argument. Burns was free to go and did not request to sit at the police station. In order for law enforcement to take Burns there against his will, Burns would have had to been in custody. By dropping Burns off at McDonald's, as he requested, the officers did not place Burns in a situation that caused his injuries after he was released from custody. That he later decided to leave McDonald's was not tied to any action of law enforcement.

## Conclusion

The decision regarding whether to take Burns into custody under KRS 202A.041 was discretionary and Williams failed to show Enricco, Noel, and Nettles acted in bad faith. The Appellants are entitled to qualified official immunity. Therefore, the order of the Scott Circuit Court is reversed.

-13-

ALL CONCUR.


BRIEFS FOR APPELLANT
JEREMY NETTLES:

D. Barry Stilz
Lynn Sowards Zellen
Lexington, Kentucky


BRIEFS OF APPELLANTS JON
NOEL AND TOMMY ENRICCO:

L. Scott Miller
William D. Razor
Lexington, Kentucky

BRIEF FOR APPELLEE:

Gregory A. Belzley
Prospect, Kentucky

Jane Winkler Dyche
London, Kentucky